UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARCUS HONZU,

              Plaintiff,

                                    **Case No. 2:22-cv-292**

      v.                        **Chief Judge Algenon L. Marbley**

WARDEN, ROSS CORRECTIONAL        **Magistrate Judge Kimberly A. Jolson**
INSTITUTION, *et al.*,

              Defendants.

## REPORT AND RECOMMENDATION

    Marcus Honzu, an Ohio prisoner proceeding *in forma pauperis* and without the assistance of counsel, has filed a civil rights complaint with this Court. (Doc. 8). Among other things, he alleges a series of retaliatory actions by staff at two Ohio prisons, most of whom are not named as defendants here. (*Id*.). The matter is currently before the undersigned Magistrate Judge to conduct the initial screening of Plaintiff's complaint as required under 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2).

    For the reasons that follow, the Undersigned determines that the Complaint fails to state a claim on which relief may be granted against any of the named Defendants, and therefore **RECOMMENDS** that the Court **DISMISS** it. The Undersigned nonetheless further **RECOMMENDS** that, if the Court agrees with this determination, the Court grant Honzu 30 days to file an Amended Complaint against appropriate defendants with respect to his claims for retaliation under the First Amendment, failure to protect or deliberate indifference under the Eighth Amendment, and the denial of due process under the Fourteenth Amendment. If Honzu does not file an Amended Complaint, this action should be dismissed in its entirety.

## I.     Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint.  28 U.S.C. §§ 1915A(a) and 1915(e)(2).  The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b) and 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must construe the complaint in Plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]).  Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting

all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II.    Parties and Claims

Plaintiff Honzu names several defendants in this action, including: the Warden of Noble Correctional Institution ("NCI"); the Warden of Ross Correctional Institution ("RCI"); the Medical Department at RCI; Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); and Mike DeWine, the Governor of Ohio. Honzu may also name the ODRC and the State of Ohio, although this is not entirely clear from the Complaint. (Doc. 8, PageID 37, 39).

Honzu raises numerous claims, many of which are vaguely written. Although it does not specify, the Undersigned construes the Complaint as raising claims under 42 U.S.C. § 1983. "Section 1983 authorizes a 'suit in equity, or other proper proceeding for redress,' against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

Among other things, Honzu alleges that he was retaliated against and harassed with false conduct reports because he reported wrongdoing at NCI and RCI. He alleges that "[t]hese acts stems from one single dispute at the Noble Correctional Institution and carried over to the Ross Correctional Institution." (Doc. 8, PageID 44). In September 2020, he says that he was subject to retaliation and false conduct reports because he "expos[ed] a cover-up of inmates [i]ncluding my

self being sick from Covid-19 and me trying to get proper medical treatment because I had asthma and was very sick." (*Id*.). In response, his security level was increased, his property went missing, his fiancé was permanently restricted from visiting, and he was transferred from NCI to RCI. (Doc. 8, PageID 44-45). Honzu also alleges that he was kicked out of the honor dorm at NCI because he complained about having Covid and wanted to be tested. (Doc. 8, PageID 45). He identifies the NCI Investigator as the person who retaliated against him and wrote the false conduct report. (Doc. 8, PageID 44). He identifies Unit Manager Hyatt, the acting investigator at NCI, as the person who kicked him out of the honor dorm. (Doc. 8, PageID 45). It is not clear whether this is the same person or different people; neither are named as defendants in this lawsuit.

Honzu was transferred from NCI to RCI in January 2021. (Doc. 8, PageID 45). He alleges that officers at RCI ignored a medical order in his file that he should be given a bottom bunk because of a knee injury. (*Id*.). When he complained, he was "locked in a room and threatened bodily harm from gang violence." (*Id*.). He identifies Lt. Spetnagle as the officer who made this and other threats. (*Id*.). Honzu does not identify the officers that ignored the medical order. Neither Lt. Spenagle nor any other officers from RCI are specifically named as defendants in this lawsuit. Honzu complained to the inspector at RCI, but no action was taken. (Doc. 8, PageID 45-46).

Honzu alleges that "Unit Staff" refused to move him out of a cell he shared with a known gang banger. (Doc. 8, PageID 46). He says that "Officers" lied in false conduct reports after planting drugs and a phone in his cell. (*Id*.). He was "assaulted by an inmate directed by staff," because "this inmate said per Certain Staff Members I had to pay money by way of the Cash app" and Honzu refused. (*Id*.). He alleges that he was denied access to the institutional grievance

procedure and could not get Unit Staff, the Inspector, or the Warden to help him or allow him access. (Doc. 8, PageID 47).

Honzu further alleges that a new asthma inhaler caused him "serious issues" and led to a "medical situation." (Doc. 8, PageID 47). Instead of treating him, medical personnel threatened him and accused him of using drugs. (*Id.*). A conduct report was written against him, and his rescue inhaler was taken away. (*Id.*). He suffered multiple asthma attacks as a result. (*Id.*). The Medical Department apologized and returned his rescue inhaler three days later. (Doc. 8, PageID 48). Honzu also asserts that "two Superior Officers" harassed him in Medical, and that he was denied treatment for an asthma-related incident caused by the altercation. (Doc. 8, PageID 49).

Honzu alleges that he continued to document these issues, but that the RCI Inspector became biased against him and began harassing him personally and denied or refused to investigate his claims and grievances. (Doc. 8, PageID 48). Some grievances were granted, however. Specifically, two grievances over the mishandling of Honzu's legal mail were granted while other grievances alleging violations of the legal mail policies were denied. (*Id.*).

Honzu alleges that in November 2021, an officer broke his TV because he would not send money to a gang member. (Doc. 8, PageID 49). Honzu was threatened that if he wrote the officer up, Honzu would be assaulted by gang members. (*Id.*). About a week later, he learned that "there was a death threat on [his] life by some officers who had been threatening him." (*Id.*). They told inmate gang members that he "better not make it to breakfast in the morning." (*Id.*). When Honzu requested assistance from the Warden's office, he alleges that he was put in segregation under investigation and punished. (*Id.*). He was eventually transferred to Lebanon Correctional Institution, where he now resides. (Doc. 8, PageID 50). The officers allegedly involved in these events are not identified and no officers from RCI are named as defendants in the Complaint.

5

Finally, Honzu alleges that the Visiting Policy was violated as part of this harassment. (Doc. 8, PageID 50).  As a result, he was unable to have visits, receive money from visitors, and was unable to have a Skype visit with his mother before she died.  (*Id*.).

Honzu seeks compensatory and punitive damages in the amount of $2,100,000.00.  (Doc. 8, PageID 43).  He also asks that two individuals be again permitted to visit him, for oversight of the grievance procedure, and for a return to his previous security level.  (*Id*.).

## III.  Discussion

Most of the factual allegations in the Complaint are against individuals who are identified but are not named as defendants (e.g., Unit Manager Hyatt, Lt. Spetnagle), or who are not specifically identified (e.g., "many officers," "Unit Staff," or "certain staff members").  Other allegations do not identify an actor at all.  The Complaint contains only a few allegations directly against the named Defendants, which are discussed in turn below.  Although the Undersigned recognizes why a plaintiff in Honzu's position might be reluctant to name specific officers as defendants, his failure to do so is fatal to those claims.  That is, the allegations in the Complaint against individuals who are not named as defendants or who are simply not identified, and the allegations that do not identify an actor, do not state a claim on which relief may be granted.  *See Parks v. Boyd*, No. 1:22-cv-41, 2022 WL 1019985, at *4 (E.D. Tenn. Apr. 5, 2022) (citing *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002)) ("as Plaintiff's complaint filings do not allow the Court to plausibly infer that any named Defendant was personally involved in the allegations he does not connect to a named Defendant, those allegations fail to state a claim upon which relief may be granted under § 1983 as to any named Defendant.").

Two principles support this conclusion.  First, the identity of an actor is important to a claim under § 1983.  As noted above, "[t]o state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation *was committed by a person acting under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). A failure to plead and identify such an actor is a failure of the basic pleading essentials required of even pro se plaintiffs. *See generally Johnson v. Nolan*, No. 1:14-cv-395, 2014 WL 3534978, at *2 (W.D. Mich. July 16, 2014) (citing *Twombly*, 550 U.S. at 544) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants."). Accordingly, allegations or claims against people who are not named as defendants should be disregarded or dismissed. *See Batson v. Hoover*, 355 F. Supp. 3d 604, 611 (E.D. Mich. 2018), *aff'd*, 788 F. App'x 1017 (6th Cir. 2019) (dismissing § 1983 claim because the record did not "suggest that any of the named individual defendants were in any way involved with the alleged deprivation . . . [The] failure to establish individual participation in the alleged violations is dispositive of all the claims against the individual defendants on this theory of recovery."); *Johnson v. Mahlman*, No. 1:16-cv-503, 2016 WL 3511954, at *3 (S.D. Ohio June 6, 2016), *report and recommendation adopted in part, rejected in part*, 2016 WL 3434010 (S.D. Ohio June 22, 2016) (dismissing claim for denial of medical care for failure to state a claim: "to the extent that plaintiff seeks to bring a claim based on the alleged denial of medical or decontamination care after the pepper-spraying incident, he has not alleged any facts even remotely suggesting that either of the two named defendants played any role in that matter [and] has not stated an actionable claim under § 1983 against the defendants based on the theory of deliberate indifference to his serious medical needs.").

Second, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability." *Hinton v. Skipper*, No. 1:21-cv-480, 2021 WL 4859744, at *2 (W.D. Mich. Oct. 19, 2021) (citing *Iqbal*, 556 U.S. at

7

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009)). "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)). To the extent that the named Defendants may hold supervisory positions over those alleged to have taken the wrongful actions, there are no allegations in the Complaint that would allow the named Defendants to be held liable on that basis. To do so, Plaintiff must allege '[a]t a minimum' . . . that the defendant[s] 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020), c*ert. denied sub nom. Hedger v. Graves*, 141 S. Ct. 2698 (2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)). In other words, a plaintiff cannot allege wrongdoing by a subordinate officer and seek to hold his superior officer liable simply because of their respective positions.

With these principles in mind, Honzu's specific claims against those individuals or entities who *are* named as Defendants are examined next.

A.    Claims against the State of Ohio and the ODRC

To the extent that Honzu named the State of Ohio and the ODRC as defendants, the claims against these entities should be dismissed. First, claims against the State of Ohio are barred by the Eleventh Amendment, which "'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)). "The [Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Maben*, 887 F.3d.

at 270, (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  Thus, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio has immunity for claims against it.  *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citing *Ohio v. Madeline Marie Nursing Homes* # 1 & # 2, 694 F.2d 449, 460 (6th Cir. 1984); *Giles v. Univ. of Toledo*, 478 F. Supp. 2d 924, 960-61 (N.D. Ohio 2007)).

The ODRC, an agency of the State of Ohio, shares in this immunity.  *Fields v. Ohio Dep't of Rehab. & Corr.*, No. 2:15-cv-1271, 2015 WL 6755310, at *3 (S.D. Ohio Nov. 4, 2015) ("State agencies constituting 'arms of the State' enjoy absolute immunity from suits for damages.  The ODRC's immunity from § 1983 claims, due to its state agency status, is well established in the Sixth Circuit.") (internal citations omitted).

Moreover, neither the State of Ohio nor the ODRC is a "person" that may be sued under § 1983.  *See Campbell v. Hamilton Cnty.*, 23 F. App'x 318, 327 (6th Cir. 2001) ("a state is not deemed a 'person' who may be sued under § 1983."); *Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-1255, 2019 WL 6251775, at *5 (N.D. Ohio Nov. 22, 2019) ("multiple courts have found that ODRC is not a 'person' subject to suit under 42 U.S.C. § 1983."); *Peeples v. Ohio Dep't of Rehab. & Corr.*, 64 F.3d 663 (6th Cir. 1995) (affirming district court's dismissal of suit against the ODRC which said that "the ODRC is not a 'person' subject to suit for damages under § 1983.") (unreported table case).

Because these Defendants are not "persons" and are otherwise immune from a suit for damages, Honzu cannot state a § 1983 claim against them on which relief may be granted.  *See Hunt*, 542 F.3d at 534 (to state a § 1983 claim, a plaintiff must allege that a deprivation of rights was "caused by a *person* acting under color of state law.") (emphasis added).  Accordingly, any claims against the State of Ohio and the ODRC should be dismissed.

B.      Claims against Governor DeWine and ODRC Director Chambers-Smith

With respect to these Defendants, Honzu identifies them by their respective titles and alleges that they "knew what was going on but failed to protect [him] in the matter and therefore aided these abusive acts against [him]. (Doc. 8, PageID 42). In the portion of his Complaint about exhaustion of administrative remedies (i.e., his use of the institutional grievance procedure), he asserts that he called the Governor and the ODRC Director before writing to this Court for relief. (Doc. 8, PageID 40). These are the only allegations against these Defendants in the Complaint.

Under these circumstances, it appears that Honzu sues the Governor and the ODRC Director in their official capacities. *See Vittetoe v. Blount Cnty., Tenn.*, 861 F. App'x 843, 851 (6th Cir. 2021) ("We assume that a government official is being sued in his official capacity, unless the pleadings provide notice that he is being sued individually."). The Eleventh Amendment immunity discussed above "extends to state officials sued in their official capacity" for damages, such as is pursued here. *Smith v. DeWine*, 476 F. Supp. 3d 635, 650-51 (S.D. Ohio 2020). This is because "'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 Fed. App'x. 646, 654 (6th Cir. 2010) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

To the extent that Honzu seeks to hold the Governor and the ODRC Director liable in their individual capacities because they oversaw subordinates who allegedly took the wrongful acts, those claims should be dismissed. As discussed above, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross*, 818 F.3d at 241 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). They likewise cannot be held liable "solely in their supervisory capacity with

overall responsibility for enforcing policies at the Ohio Department of Rehabilitation and Corrections." *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *3 (N.D. Ohio July 19, 2019). To the extent that Honzu seeks to hold them liable for not intervening on his behalf, this single allegation fails to state a claim. *See Johnson v. Ohio*, No. 1:19-cv-447, 2020 WL 3578539, at *4 (S.D. Ohio Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 3577763 (S.D. Ohio July 1, 2020) (citing *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) ("Section 1983 liability is premised on active unconstitutional behavior and not a mere failure to act.").

For all these reasons, the claims against Governor DeWine and ODRC Director Chambers-Smith should be dismissed.

C.    Claims against the Wardens

Honzu names the Wardens of Noble and Ross Correctional Institutions as Defendants. (Doc. 8, PageID 37, 39). As far as the Undersigned can discern, the pro se Complaint contains no specific allegations against the NCI Warden. As noted above, a defendant cannot be held liable simply because he supervised others who allegedly denied Honzu's rights. *See Peatross*, 444 F.3d at 751. As there are no other allegations of the NCI Warden's personal involvement in these claims, any claims against him should be dismissed. *See Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) ("The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'") (emphasis in original).

With respect to the RCI Warden, Honzu includes three allegations in the Complaint. First, he alleges that, while he was in "limited privilege housing" at RCI, he "was denied access to the jpay and grievance procedures after many requests to use it. [He] kept reaching out to Unit Staff, the inspector, and the Warden to help me or to allow me access to document issues . . . of harassment and retaliation." (Doc. 8, PageID 47; *see also* PageID 50 ("I can prove the Warden would not help me & under his watch I was abused.")). The Complaint does not say so, but it is implied that the Warden did not allow Honzu to access the grievance procedure and did not take action on his attempted grievances. (*Id.*).

This allegation does not state a claim that can be pursued in a § 1983 action. In general, claims that a prison official limited access to the institutional grievance procedure, or failed to take action on an inmate's grievance, or denied an inmate's grievance, cannot succeed in a § 1983 action. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (affirming the dismissal of a § 1983 claim concerning limited access to the grievance procedure because there is no "constitutional right to unfettered access to a grievance procedure"); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (*quoting Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) (The mere denial of a prisoner's grievance states no claim of constitutional dimension.").

This is because a § 1983 claim requires a plaintiff to allege the deprivation of a *constitutional* right. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001). But "there is no inherent constitutional right to an effective prison grievance procedure," or "to unfettered access to a grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Walker*, 128 F. App'x at 445. Without a constitutional right to point to, a plaintiff

cannot allege the deprivation of a constitutional right. Accordingly, the RCI Warden cannot be held liable under § 1983 for not allowing Honzu to access the grievance procedure or for failing to act on his attempted grievances.[1]

The second mention of the RCI Warden in the Complaint is less clear. Honzu alleges that the RCI "*Inspector* became bias[ed] against me and began harassing me personally. He would not grant me requested materials, would not do investigations in my situations, started charging me for services, disregarded my issues, would not respond in a timely manner, and allowed this intimidation to take place in front of him by the Warden himself at Ross Correctional Institution." (Doc. 8, PageID 48) (emphasis added). The Undersigned is unable to discern in this allegation a plausible claim that the RCI *Warden* deprived Honzu of his federal constitutional rights.

Whether Honzu means that the RCI Warden intimidated him in some unspecified way, or that the Warden was present for and aware of the Inspector's intimidation, neither allegation states a claim under § 1983. A bare claim of intimidation fails to state a § 1983 claim. *See Austin v. Kutchie*, No. 2:18-cv-87, 2018 WL 4870874, at *2 (W.D. Mich. Oct. 9, 2018) ("in the absence of meaningful harm or an accompanying violation of rights, verbal harassment and intimidation are not sufficient to state a claim."). As discussed, claims that an official failed to take action or to take the requested action on a grievance or other complaint fails to raise an independent constitutional claim. *See Lee v. Mich. Parole Bd.*, 104 Fed. App'x. 490, 493 (6th Cir. 2004). And, without allegations that the RCI Warden "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct," the RCI Warden cannot be held liable for the Inspector's—or other officers'—alleged wrongdoing. *See Graves*, 810 F. App'x at 420; *Gregory*

---

[1] The Complaint appears to attempt to raise grievance-related allegations against unidentified officers and/or those who are not named as defendants in this case. Even if these individuals were properly named as defendants, the grievance procedure claims against them would fail for the same reasons.

*v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("In order for liability to attach to any of these supervisors, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.").

The third mention of the RCI Warden, or rather, of "the Warden's Office," concerns an incident on November 21, 2021, when Honzu was "threatened by officers" and "discovered there was a death threat on [his] life by these officers." These unidentified officers "told inmate gang members I better not make it to breakfast in the morning. I had no choice but to request assistance from the Warden's Office. I continued to be harassed. I was put in segregation under investigation for no reason and punished." (Doc. 8, PageID 49).[2] Honzu was transferred to Lebanon Correctional Institution, where he now resides. (Doc. 8, PageID 50, 37).

These allegations may be intended to state a "failure to protect" claim against the RCI Warden. "Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners." *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 512 (6th Cir. 2001) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir. 1998)). The "Eighth Amendment's prohibition of cruel and unusual punishment . . . requires prison officials to take reasonable measures to guarantee the safety of the inmates." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 832; *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (internal quotation marks omitted). However, "not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials

---

[2] In his initial letter to the Court, Honzu said: "When I overhe[a]rd this threat, I had my fiancée call down here to have me moved from the dorm where these officers worked and I was immediately put in segregation under investigation. . . . The next day . . . I was told by Sgt. Lee from my dorm that I had to fill out Protective Control paper work to be moved to another dorm." (Doc. 8, PageID 2). His request for protective control (against the officers, rather than other inmates) "was denied but the PC Committee recommended a transfer on me." (*Id.*).

responsible for the victim's safety.'" *Hamilton,* 341 F. App'x at 171 (quoting *Farmer*, 511 U.S. at 834).

Any failure to protect claim against the RCI Warden based on the description of this November 21, 2021 incident would fail. There is no indication that these reported threats materialized and that Honzu was injured. Honzu does not allege, for example, that he was attacked that day or that he was otherwise physically injured following this incident. Without any physical injury, he does not state a claim for a failure to protect. *See Mitchell v. Washington*, No. 2:19-cv-10633, 2019 WL 2005916, at *3 (E.D. Mich. May 7, 2019) (and the cases cited therein) ("The major problem with plaintiffs [failure to protect] claim is that he was not actually physically assaulted at the Macomb Correctional Facility as a result of the defendants' alleged acts. To state a failure-to-protect claim, a plaintiff must allege physical injury.").

Moreover, it appears that some reasonable action was taken to safeguard Honzu from the allegedly imminent attack. He was placed in segregation, and eventually, transferred to a different institution. (Doc. 8, PageID 49). Such a transfer was Honzu's initial request to this court. (Doc. 1, PageID 3 ("If possible I am requesting an immediate emergency transfer (removal) from this prison [RCI].")). Although he was not happy with the institutional transfer, which he alleges was retaliatory because of *where* he was placed (Doc. 8, PageID 50), these actions appear to be a reasonable attempt to protect him from violence by the allegedly threatening inmates and officers. *See Mitchell,* 2019 WL 2005916, at *3 ("to the extent plaintiff asserts that he was transferred from the Macomb Facility as a result of the threats made against him, such action shows that the defendants were not deliberately indifferent to his safety but took a form of corrective action."). "Responding to a risk to an inmate by referring the matter for further investigation or taking other appropriate administrative action may in some cases fulfill an official's protective duties under the

Eighth Amendment." *Bishop v. Hackel*, 636 F.3d 757, 769-770 (6th Cir. 2011).").  A determination of whether these actions were sufficient need not be made at this time, however. Because no injury is alleged, this failure to protect claim against the RCI Warden should be dismissed.

The Undersigned nonetheless **RECOMMENDS** that Honzu be permitted to file an Amended Complaint naming appropriate defendants and setting out any claims he may have under the Eighth Amendment concerning the alleged assault(s) against him at RCI.[3]

D.     Claims against Medical Department at RCI

While at RCI, Honzu's asthma flared up.  (Doc. 8, PageID 47).  He was put on another inhaler, which caused him "serious issues."  In the days while he was waiting to see a doctor about it, Honzu alleges that he suffered "a medical situation" because of the new inhaler.  Rather than treating him, staff members accused Honzu of using drugs.  (*Id*.).  He was taken to Medical where:

> I advised Medical Supervisor that I was suffering an emergency situation and did not use drugs but I kept being accused. I was threatened by Medical Personel, accused of threatening to kill myself, placed in a drunk tank for over 5 hours and harassed by officers and staff.

---

[3] *See generally Allen v. Aramark Corp*., No. 3:07-cv-P260, 2009 WL 1126093, at *3 (W.D. Ky. Apr. 27, 2009):

> In order to assert a cognizable § 1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries. *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985). Allegations premised upon mere conclusions and opinions fail to state an adequate claim, *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim. *Hall v. United States,* 704 F.2d 246, 251 (6th Cir. 1983).
>
> Furthermore, a complaint filed under § 1983 must also show a causal connection between the named defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by the defendants was the proximate cause of the constitutional injury. *King v. Massarweh,* 782 F.2d 825, 829 (9th Cir. 1986).

(Doc. 8, PageID 47).  Although a drug test came back negative, he was written a conduct report for using drugs.  (*Id*.).  He was found not guilty of these charges.  (Doc. 8, PageID 48).

Honzu alleges that his rescue inhaler was taken away from him and he suffered multiple asthma attacks as a result.  (Doc. 8, PageID 47).  Three days later, it was returned to him "with a Sorry from [the] Medical Department."  (Doc. 8, PageID 48).

A few months later, on August 17, 2021, Honzu alleges that he was "harassed in medical by two Superior Officers.  He alleges that "because of this altercation," he "began to have [an] asthma related incident," but was denied medical attention.  (Doc. 8, PageID 48).  Honzu also appears to allege that he was denied medical attention on or around November 21, 2021 while in segregation, but he does not describe the medical issue or identify who denied him medical care. (Doc. 8, PageID 49).

"The Eighth Amendment protects an individual from 'cruel and unusual punishments.'" *Murray v. Dep't of Corr.*, 29 F.4th 779, 786 (6th Cir. 2022) (quoting U.S. CONST. amend. VIII). "A government official violates an incarcerated person's Eighth Amendment rights when the official shows 'deliberate indifference to serious medical needs.'"  *Murray*, 29 F.4th at 786 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

"An Eighth Amendment claim against a government official has both an objective and a subjective component." *Murray*, 29 F.4th at 786 (quoting *Richmond v. Huq*, 885 F.3d 928, 93-38 (6th Cir. 2018)).  "To meet the objective component, the plaintiff must show that the medical need is 'sufficiently serious.'"  *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021) (quoting *Farmer,* 511 U.S. at 834).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Harrison v. Ash*, 539 F.3d 510, 518-19 (6th Cir.

2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). Asthma can satisfy this "objective" requirement. *See Harrison* 539 F.3d at 519 ("the parties do not dispute the fact that asthma satisfies the 'objective' requirement of [plaintiff's] deliberate indifference claim. Indeed, the symptoms associated with an asthma attack—wheezing, difficulty breathing, tightness in the chest—are quite obvious and recognizable even to a lay person."); *Harris v. Anderson*, No. 2:07-cv-186, 2009 WL 1850446, at *4 (E.D. Tenn. June 26, 2009) (an asthma attack "depending on its acuteness, may well amount to a sufficiently serious condition.").

"To meet the subjective component, the plaintiff must show that 'an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Brawner*, 14 F.4th at 591 (quoting *Farmer*, 511 U.S. at 837). In other words,

> The subjective component requires a plaintiff to show that "each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." [*Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 568 (6th Cir. 2020)] (quoting *Rhinehart* [*v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018)]. This is a high standard of culpability, "equivalent to criminal recklessness." *Id.*

*Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605-06 (6th Cir. 2022).

As noted above, Honzu names the "Medical Department at Ross Correctional Institution" with respect to his medical claims. (Doc. 8, PageID 39). But the Medical Department, like the State of Ohio or the ODRC, is not a "person" that can properly be sued under § 1983. *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) (holding that "medical departments are not 'persons' under § 1983, and that [plaintiff's] claims against them fail as a matter of law."). The claims should therefore be dismissed. However, the Undersigned will

18

**RECOMMEND** that Honzu be permitted to file an Amended Complaint naming appropriate defendants, even if they are John Doe defendants,[4] with respect to these claims.

      E.    <u>Other Specific Claims Against Non-Defendants</u>

          *1.*    ***Retaliation***

Although Honzu includes in his Complaint a number of statements alleging retaliation against him at NCI and RCI, he has not alleged that any of the named Defendants took the retaliatory actions. For example, he alleges that he was harassed and abused by "staff members and others" in retaliation for "exposing a Covid-19 cover up" at NCI. (Doc. 8, PageID 42). He alleges that the Investigator at NCI retaliated against him by writing a false conduct report "in direct retaliation for me exposing a cover up on inmates [i]ncluding my self being sick from covid-19 and me trying to get proper medical treatment…." (Doc. 8, PageID 44). Unit Manager Hyatt allegedly kicked him out of the honor dorm because he complained about having Covid-19 and wanted to be tested. (Doc. 8, PageID 44-45). "Officers" at RCI allegedly planted drugs and a phone in his cell when he complained about a medical order not being honored. (Doc. 8, PageID 46). "Certain staff members" allegedly directed other inmates to assault Honzu because he would not pay money to someone. (*Id.*). An officer allegedly broke his TV because he would not send money to a gang member. (Doc. 8, PageID 49). He was then told by "other officers" that if he

---

[4] "Although designation of a 'John Doe' or 'unknown' defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery." *Robinson v. Doe*, No. 1:07-cv-729, 2009 WL 650383, at *2 (S.D. Ohio March 10, 2009) (collecting cases). If Honzu does name John Doe defendant(s), he will be required to timely amend his Complaint again to identify them by name once their identity has been discovered. *See generally* Fed. R. Civ. Pro. 15 (concerning amended and supplemental pleadings); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run"); *Moore v. Moore*, No. 1:19-CV-01634, 2019 WL 6683171, at *3 (N.D. Ohio Dec. 6, 2019) ("the statute of limitations for all of Plaintiff's § 1983 claims is two years"). In addition, service of process on any newly-identified John Doe defendants must be completed in accordance with Fed. R. Civ. Pro. 4(m), which states: "Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

reported that incident, he would be assaulted by gang members.  (*Id*.)  These threats allegedly escalated to threats on Honzu's life.  (*Id*.).

 None of the individuals who allegedly took these actions have been named as defendants here, and the Complaint therefore fails to state a claim on which relief may be granted with respect to these allegations.  *See* Section III, above.  Given the serious nature of some of these allegations, however, the Undersigned will **RECOMMEND** that Honzu be permitted to file an Amended Complaint naming a proper defendant or defendants and pleading facts to state a retaliation claim. *See generally Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) ("A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.").

### 2.    *Violations of ODRC Policy*

Honzu alleges that the ODRC Visiting Policy was violated, leading to—among other things—the denial of a Skype visit with his mother before she died.  (Doc. 8, PageID 50).  He also alleges that the ODRC's legal mail policy and other polices were violated when his legal mail was opened outside his presence and he did not sign for it.  (Doc. 8, PageID 44, 48).

Section 1983 does not provide a remedy for violations of state laws or regulations.  *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has

20

occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate").  And, "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases).  Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases).  Plaintiff's allegations or suggestions here that prison staff failed to follow ODRC or state policies therefore do not independently state a claim for a violation of federal law that can be pursued in a § 1983 action. *See Burgess*, 2021 WL 5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a § 1983 claim, the Court dismisses that claim").  These claims, which are not articulated as against any named Defendant, should also be dismissed.

### 3.  *Access to the Court*

Honzu's allegation that his legal mail was opened may also be an attempt to state a claim for denial of access to the courts.  (Doc. 8, PageID 44).  Under the First Amendment, prisoners have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial." *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349).  "Actual injury" is not shown "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000).  "In other words, an inmate who

claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Wilburn*, 43 F. App'x. at 733 (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).  Here, Honzu has not alleged any facts showing he suffered any actual injury as a result of the opening of his legal mail, such as showing he has been unable to file court pleadings, missed court deadlines, or had a case dismissed in any nonfrivolous legal proceeding based on the destruction of his papers.  The Undersigned recognizes that there apparently was a delay in mailing Honzu's Complaint in this case, which may be part of this allegation (*see* Doc. 8, PageID 48), but this delay did not cause the case to be dismissed.  (*See* Doc. 7 (ordering Honzu to file a complaint or risk dismissal of this case for failure to prosecute); Doc. 8 (noting Honzu filed a complaint and discussing how the case would proceed)).  Without an allegation of actual injury, the Complaint fails to state a claim for denial of access to the courts under the First Amendment.

### 4.    *False Conduct Reports*

Honzu alleges in his Complaint that false conduct reports were written against him.  (*See, e.g.*, Doc. 8, PageID 42, 45, 46, 47).  Although potentially relevant to a retaliation claim, these allegations do not independently state a claim under § 1983.  The Sixth Circuit has said that "[a] prisoner has no constitutional right to be free from false accusations of misconduct."  *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (quoting *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003)); *see also Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *3 (S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021) ("Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right.").  "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process."  *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2

(N.D. Ohio Jan. 31, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)).  However, "[t]o the extent that false accusations of misconduct implicate due process concerns, the false charges 'do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing.'" *Brown*, 2019 WL 5436159, at *4 (quoting *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004)).

One allegation in the Complaint comes closer to stating a claim in this respect.  Honzu alleges that in September 2020, the Investigator at NCI wrote a false conduct report against him. He further alleges that he was denied due process at his hearing before the Rules Infraction Board ("RIB"), the institution's "inside court," leading to the increase of his security level, his fiancée being permanently restricted from visiting, and a transfer from NCI to RCI.  (Doc. 8, PageID 44). No explanation of the denial of due process is provided.[5]  As discussed, the NCI Inspector has not been named as a defendant in this lawsuit, so this claim should be dismissed.  The Undersigned will, however, **RECOMMEND** that Honzu be permitted to file an Amended Complaint naming an appropriate defendant and providing this Court with additional details about this due process claim.

### 5.    *Property Loss*

Honzu alleges that some items of his personal property "came up missing" at RCI in September 2020 when he was placed in segregation.  (Doc. 8, PageID 44, 42, 45).  He also alleges that an officer at RCI broke his TV.  (Doc. 8, PageID 49).  In order to state a claim "for destruction of personal property under the Fourteenth Amendment," a plaintiff must "plead . . . that state remedies for redressing the wrong are inadequate."  *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th

---

[5] The "the minimum due process requirements for such a disciplinary hearing are:  (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken."  *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *5, n7 (N.D. Ohio July 19, 2019) (citing *Wolff v. McDonnell,* 418 U.S. 539 (1974)).

Cir. 1983).  *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Here, Honzu has not pled this required element in his Complaint but has simply alleged that his property went missing or was broken.  These bare allegations fail to state a claim.  *See Darling v. Lake Cnty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cnty. Com'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007)) (a plaintiff "does not state a due process claim merely by alleging the deprivation of property").  The Undersigned notes that these allegations may be relevant to an amended retaliation claim, but that they do not independently state a claim under the Fourteenth Amendment.

## IV.    Summary and Conclusion

The Complaint fails to state a plausible claim under Section 1983 against any of the named Defendants.  The Undersigned therefore **RECOMMENDS** that the Court **DISMISS** it in its entirety.  But, given the nature of the allegations raised against persons who are not named as defendants, the Undersigned further **RECOMMENDS** that, if the Court agrees with this determination, the Court grant Honzu 30 days to file an Amended Complaint against appropriate defendants with respect to his claims for retaliation under the First Amendment, failure to protect or deliberate indifference under the Eighth Amendment, and the denial of due process under the Fourteenth Amendment, as discussed in this Report and Recommendation.  If Honzu does not file an Amended Complaint, this action should be dismissed in its entirety.

The Clerk is **DIRECTED** to send Honzu an additional copy of this Court's Pro Se Handbook for his reference, as it appears the previous copy was not forwarded to him from his prior institution.  (*See* Doc. 8, PageID 51).

**VI.     Notice Regarding Objections to this Report and Recommendation**

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date:  July 29, 2022                                    /s/Kimberly A. Jolson
                                                                        KIMBERLY A. JOLSON
                                                                        UNITED STATES MAGISTRATE JUDGE

25