**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARCUS HONZU,**

        **Plaintiff,**

    **v.**

**JOHN DOE [1] – CHIEF INSPECTOR OF**
**ODRC,** *et al.,*

        **Defendants.**

**Case No. 2:22-cv-292**
**Chief Judge Algenon L. Marbley**
**Magistrate Judge Kimberly A. Jolson**

<u>**ORDER and**</u>
<u>**REPORT AND RECOMMENDATIONS**</u>

This matter is before the Court for an initial screening of Plaintiff Marcus Honzu's Amended Complaint. (Doc. 20). Honzu, a state prisoner proceeding *in forma pauperis* and without the assistance of counsel, first approached this Court for relief in January 2022. (*See* Doc. 1). He submitted his original Complaint in June 2022. (Doc. 8). The Undersigned recommended that his Complaint be dismissed, but that Honzu be given an opportunity to file an amended complaint. (Doc. 10). In December 2022, the District Judge adopted the recommendation. (Doc. 17). Honzu has now submitted an Amended Complaint that appears to address the situations described in his earlier filings. (Doc. 20).

As before, the Undersigned considers the Amended Complaint under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2). The Undersigned **RECOMMENDS** that the Court allow Honzu to **PROCEED** further at this time on some of his claims against some of the Defendants in their individual capacities, as discussed below, but that the remaining claims be **DISMISSED**.

## I.    Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint.  28 U.S.C. §§ 1915A(a) and 1915(e)(2).  The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b) and 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must construe the complaint in Plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]).  Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting

all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II.     Parties and Claims

Plaintiff Honzu's Amended Complaint is actually thirteen complaints, filed together with a "Cover Sheet." (Doc. 20.) He names thirteen defendants, all of whom are associated with the Ohio Department of Rehabilitation and Correction ("ODRC") and/or one of two ODRC prisons: Noble Correctional Institution ("NCI") or Ross Correctional Institution ("RCI"). (Doc. 20, PageID 130). Honzu identifies each defendant by their position or title. (Doc. 20, PageID 129). Several are John or Jane Doe Defendants, which the Undersigned has numbered for ease of reference. Defendants are:

1.     John Doe [1] – Chief Investigator of ODRC

2.     John or Jane Doe [2] – Medical Supervisor at NCI

3.     John Doe [3] – Investigator at NCI

4.     John or Jane Doe [4] – Mailroom Supervisor at NCI

5.     Mr. Hyatt – Unit Manager at NCI

6.     Mr. Cobb – RIB Lieutenant at NCI

7.     Todd Diehl – Inspector at RCI

8.     John or Jane Doe [5] – Medical Supervisor at RCI

9.     Mr. Spetnagel – Lieutenant at RCI

10.    Ms. Lyons – Sergeant/RIB Hearing Officer at RCI

11.    Thomas DePugh (or Depugh) – Correctional Officer at RCI

12.    Mr. Rosenberger – Correctional Officer at RCI

13.    John Doe [6] (also referred to as Officer Anthony) – Correctional Officer at RCI

(Doc. 21, PageID 129). Honzu appears to sue Defendants in their individual and official capacities.

3

(Doc. 20, PageID 130).  It is not clear what relief he seeks.[1]

Honzu appears to raise claims under 42 U.S.C. § 1983.  "Section 1983 authorizes a 'suit in equity, or other proper proceeding for redress,' against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.'"  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To state a cause of action under Section 1983, a plaintiff must allege:  "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

Honzu alleges, as he did in his original Complaint, that he was retaliated against and harassed with false conduct reports because he reported wrongdoing at NCI and RCI.  (Doc. 20). Some of the specifics of his claims are discussed in more detail below.

As noted, Honzu has organized his claims against each defendant in a separate complaint within his Amended Complaint; the Undersigned considers the complaints together as the operative complaint.  *See Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020) (citations omitted) ("As a general matter, an "amended complaint supersedes the original complaint'"). Honzu raises claims under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as this Court previously suggested he could.  (Doc. 20; Doc. 17).

---

[1] In his original Complaint, Honzu sought compensatory and punitive damages in the amount of $2,100,000.00. (Doc. 8, PageID 43).  He also asked that two individuals be again permitted to visit him, for oversight of the grievance procedure, and for a return to his previous security level.  (*Id.*).

III.    **Discussion**

A.    <u>**Claims for Monetary Damages against Defendants in their Official Capacities**</u>

Before addressing the individual claims, the Undersigned considers the capacity in which Defendants are sued.  As noted, Honzu sues all Defendants in their "own individual capacity and as employees of the Ohio Department of Rehabilitation and Corrections."  (Doc. 20, PageID 130). To the extent this means that Defendants are sued in their official capacities, any claims against them for monetary damages should be dismissed.

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)).

Here, the Amended Complaint says that all Defendants work for the ODRC, which is an agency of the State of Ohio.  (Doc. 20, PageID 129–130).  *See Fields v. Ohio Dep't of Rehab. & Corr.*, No. 2:15-cv-1271, 2015 WL 6755310, at *3 (S.D. Ohio Nov. 4, 2015).  Claims against Defendants in their official capacities are thus the same as claims against the State of Ohio.

Claims for damages against the State of Ohio are barred by the Eleventh Amendment to the United States Constitution, which "'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).  "The [United States Supreme] Court has held that, absent waiver by the State or valid

congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Maben*, 887 F.3d. at 270, (quoting *Graham*, 473 U.S. at 169). Here, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio has immunity for claims against it. *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citing *Ohio v. Madeline Marie Nursing Homes* # 1 & # 2, 694 F.2d 449, 460 (6th Cir. 1984) and *Giles v. Univ. of Toledo*, 478 F. Supp. 2d 924, 960-61 (N.D. Ohio 2007)).

The State of Ohio's immunity extends to suits for monetary damages against state employees who are sued in their official capacity, because such a suit is the same as a suit against the state itself. *See Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Graham*, 473 U.S. at 165) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."). Accordingly, any claim for damages against Defendants in their official capacities is barred. The Undersigned **RECOMMENDS** that all claims for monetary damages against all Defendants *in their official capacities* be **DISMISSED**. *See* 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2) (requiring dismissal of any part of a complaint that "seeks monetary relief [against] a defendant who is immune from such relief.").

The claims against Defendants *in their individual capacities* are addressed in the following Sections.

### B. First Amendment Claims

#### 1. Retaliation

Honzu raises retaliation claims against twelve of the thirteen Defendants.[2] "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an

---

[2] Honzu does not raise a retaliation claim against John or Jane Doe [2], the Medical Supervisor at NCI. (Doc. 20, PageID 132).

adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Construing Honzu's Amended Complaint liberally, the Undersigned **RECOMMENDS** that the Court allow Honzu to **PROCEED** at this time with his retaliation claims against:

1. John Doe [3], Investigator at NCI (*see* Doc. 20, PageID 134) (wrote false conduct report to punish Honzu for complaining about a COVID-19 cover up).

2. Mr. Hyatt, Unit Manager at NCI (*see* Doc. 20, PageID 137) (kicked Honzu out of the merit dorm when he complained about a COVID-19 cover up).

3. Todd Diehl, Institutional Inspector at RCI (*see* Doc. 20, PageID 139) (denied Honzu access to the grievance procedure, legal kits, and the ability to file charges with the State Highway Patrol when he complained about staff actions).

4. Lieutenant Spetnagel, Lieutenant at RCI (*see* Doc. 20, PageID 142–143) (threatened and directed an assault on Honzu for complaining about, and for not dropping his complaints about, staff members).

5. Sergeant Lyons, Sergeant/RIB Hearing Officer at RCI (*see* Doc. 20, PageID 144) (denied his ability to present a defense because of his ongoing complaints against RCI staff members).

6. Thomas DePugh, Correctional Officer at RCI (*see* Doc. 20, PageID 145) (planted drugs and cellular phone in Honzu's cell, then wrote a false conduct report because of Honzu's complaints about staff members).

7. Officer Rosenberger, Correctional Officer at RCI (*see* Doc. 20, PageID 146) (wrote a false conduct report because of Honzu's complaints about staff members).

8. Officer Anthony (John Doe [6]), Correctional Officer at RCI (*see* Doc. 20, PageID 147) (threatened Honzu over months with assault and told inmates he was a "snitch" because Honzu continued to complain about staff members).

The Undersigned **RECOMMENDS** that the Court **DISMISS** Honzu's retaliation claims against the remaining defendants. As noted above, to plead a retaliation claim, a plaintiff must allege that he engaged in *protected conduct* that motivated the defendant(s) to take an adverse

7

action against him.  *Thaddeus-X*, 175 F.3d at 394.  With respect to the remaining defendants, Honzu does not allege that their wrongful actions were motivated by any protected conduct.  In other words, although he labels their actions as retaliation, he does not adequately plead the first element of a retaliation claim—that he engaged in protected conduct.

For example, Honzu's Amended Complaint with respect to John or Jane Doe [4], the Mailroom Supervisor at NCI, says:

> Mailroom Supervisor John / Jane Doe retaliated against Marcus Honzu by violating policies at NCI and opening up Honzu's legal mail on Multiple occasions in violation of policies that state you cannot open up Legal Mail outside of the inmate's presence.  The Mailroom Supervisor lied to the inspector and the Major stating they had no knowledge of this but the inspector advised the Mailroom Supervisor regarding this issue. Because this legal mail has to be signed for by the inmate and opened (only) in the presence of the inmate this also denied Honzu the right to Due Process.  Honzu complained that his legal mail continued to be opened in violation of policy and this violation continued despite the inspector agreeing with Honzu that a violation had [occurred] in Granting Honzu's Grievance against the Matter. This Act(s) caused Honzu to Suffer Severe Mental, Physical, and Emotional pain and distress.

(Doc. 20, PageID 136).  Honzu does not allege that the Mailroom Supervisor opened his mail *because* Honzu filed a lawsuit or a grievance, for example.  (*Id.*).  Simply labelling the conduct as retaliatory is not enough.  *See Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 556 (2007)) (a complaint that consists of "labels and conclusions" is insufficient).  The same problem exists with respect to the remaining retaliation claims.

Accordingly, the Undersigned **RECOMMENDS** that the Court **DISMISS** Honzu's retaliations claims against:

9. John Doe [1], Chief Inspector of the ODRC (Doc. 20, PageID 131).[3]

---

[3] Honzu's retaliation claim against John Doe [1] is also subject to dismissal because Honzu does not allege that John Doe [1] took any adverse action against him.  (*See* Doc. 20, PageID 131).  Honzu says that John Doe [1] failed to investigate his claims, and "threatened" that if he continued to complain, he would be subject to disciplinary action and denied access to the grievance procedure.  (*Id.*).  But Honzu does not allege that *John Doe [1]* actually took any of these actions.  Rather, Honzu says that Todd Diehl denied him access to the grievance procedure (Doc. 20, PageID 139) and that others (John Doe [3], DePugh, and Rosenberger) wrote false conduct reports against him.  (Doc. 20,

10. <u>John or Jane Doe [4] – Mailroom Supervisor at NCI</u> (Doc. 20, PageID 136).

11. <u>Lieutenant Cobb – RIB Lieutenant at NCI</u> (Doc. 20, PageID 138).

12. <u>John or Jane Doe [5] – Medical Supervisor at RCI</u> (Doc. 20, PageID 140–141).

The Undersigned expresses no opinion at this time on the merits of the claims that should proceed.

## 2. *Legal Mail*

The Undersigned previously recommended that Honzu's apparent claims for a denial of access to the court—based on the alleged opening of his legal mail—be dismissed, as Honzu had not alleged any actual injury to any pending litigation. (Doc. 10, PageID 76–77). *See Lewis v. Grider*, 27 F. App'x. 282, 283 (6th Cir. 2001) (prisoner's claim for interference with access to courts through opening legal mail failed "as he alleged no prejudice to any pending litigation"); *Lewis v. Cook County Bd. of Com'rs*, 6 F. App'x. 428, 430 (7th Cir. 2001) (plaintiff could not prevail when he did "not describe a single legal case or claim that was in any way thwarted because the mail room staff opened his legal mail."). The District Judge adopted the recommendation. (Doc. 17, PageID 127).

Honzu raises the issue again in his Amended Complaint against two NCI Defendants: John Doe [3], the Inspector at NCI, and John or Jane Doe [4], the Mail Room Supervisor at NCI. (Doc. 20, PageID 134, 136). He alleges that "John Doe [3] violated institutional policy's and or procedure when he opened Honzu's alleged legal [mail] outside his presence in violation of the legal mail policies." (Doc. 20, PageID 134). He further alleges that John or Jane Doe [4], the Mail Room Supervisor at NCI, opened his legal mail "on multiple occasions" and then lied about it when asked. (Doc. 20, PageID 136). He appears to allege that these two defendants personally

---

PageID 134, 145, 146). The retaliation claims against these defendants should proceed for their own actions. *See Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)) ("individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior").

opened his mail. (*Id*., PageID 134, 136). He also appears to allege that the Inspector agreed with Honzu that a violation had occurred. (*Id*., PageID 136).

To the extent he is again presenting an access-to-courts claims, Honzu again fails to allege any actual injury. He has not alleged "that [a legal] claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000). "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Wilburn v. Howe*, 43 F. App'x. 731, 733 (6th Cir. 2002) (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). As Honzu has not alleged any such actual injury with respect to any court litigation, any First Amendment access-to-courts claim fails.

To the extent that Honzu frames these issues as violations of state or ODRC policies (Doc. 20, PageID 134, 136), they also fail. As the Undersigned previously noted, "Section 1983 does not provide a remedy for violations of state laws or regulations." (Doc. 10, PageID 75 (citing *Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007))). "Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases).

However, "[e]ven opening a handful of privileged letters, [the Sixth Circuit has] said, violates an inmate's clearly established constitutional right under the First Amendment." *Salem v. Warren*, 609 F. App'x 281, 283 (6th Cir. 2015) (citing *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) and other cases). Without the benefit of an Answer or other briefing, the Undersigned **RECOMMENDS** that this Court allow Honzu's apparent claim for interference with

10

his privileged legal mail under the First Amendment to **PROCEED** as against John Doe [3], the Inspector at NCI, and John or Jane Doe [4], the Mail Room Supervisor at NCI.  The Court should **DISMISS** any access-to-courts claim or claim based solely on the violation of ODRC policy.

### C.    Eighth Amendment Claims

#### 1.  *Deliberate Indifference to Serious Medical Needs*

In his Amended Complaint, Honzu raises claims concerning the adequacy of medical treatment he received against two defendants:  John or Jane Doe [2], the Medical Supervisor at NCI; and John or Jane Doe [5], the Medical Supervisor at RCI.  (Doc. 20, PageID 132, 140–141).

Among other things, he alleges that John or Jane Doe [2], the Medical Supervisor at NCI, ignored institutional protocols and policies concerning quarantine of sick inmates and failed to protect Honzu from contracting COVID-19.  (*Id.*, PageID 132).  He alleges that this defendant failed to treat him when he did contract COVID-19 and became "severely ill" with "breathing complication because of asthma."  (*Id.*).

With respect to John or Jane Doe [5], the Medical Supervisor at RCI, Honzu alleges that this defendant failed to honor a "bottom bunk restriction" that was in place due to a previous knee injury, causing him pain.  (Doc. 20, PageID 140).  Honzu also alleges that this defendant failed to provide appropriate treatment when Honzu experienced a medical emergency after using a new inhaler.  (*Id.*).  Rather than treat him, this defendant allegedly threatened Honzu and put him in a "drunk tank" for five hours.  (*Id.*).  Honzu says that he suffered multiple asthma attacks thereafter when his rescue inhaler was taken away from him.  (*Id.*).

Having reviewed the claims, but without the benefit of an answer or other briefing, the Undersigned **RECOMMENDS** that the Court allow Honzu's Eighth Amendment deliberate indifference claims against both defendants to **PROCEED**.  *See generally Brawner v. Scott Cnty.,*

*Tenn.*, 14 F.4th 585, 591 (6th Cir. 2021) (discussing the objective and subjective standards for such

claims); *see also Brooks v. Washington*, 6th Cir. No. 21-2639 (Mar. 30, 2022 unpublished order)

(remanding to the district court for further proceedings, finding that plaintiffs "put forth sufficient

allegations that the defendants knew of and disregarded an excessive risk to inmate health or

safety" with respect to their COVID-19 response).[4]  (*See also* Report & Recommendation, Doc.

---

[4] The Sixth Circuit said:

> Brooks . . . alleged that the defendants violated their Eighth Amendment rights by acting with deliberate indifference to the serious health and safety risks posed by COVID-19.
> . . .
> Brooks challenges the district court's ruling that he and his co-plaintiffs failed to state a cognizable Eighth Amendment claim for deliberate indifference. A deliberate-indifference claim under the Eighth Amendment includes both an objective and a subjective prong: (1) the inmate "is incarcerated under conditions posing a substantial risk of serious harm" (the objective prong); and (2) "the official knows of and disregards an excessive risk to inmate health or safety" (the subjective prong). *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). As we have recognized, "the objective prong is easily satisfied" in the present context, because "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020). "The transmissibility of the COVID-19 virus in conjunction with [a prison's] dormitory-style housing—which places inmates within feet of one another—and [an inmate's] health risks, presents a substantial risk that [an inmate] will be infected with COVID-19 and have serious health effects as a result, including, and up to, death." *Id.* Similarly, the objective prong is sufficiently met here.

> The subjective prong, on the other hand, generally requires a plausible allegation that the defendants "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 842). Brooks argues that the defendants "were not [proactive] in their actions to prevent the . . . spread of [COVID-19]," but that they were instead "[reactive] to the matter, [scrambling] about to find temporary resolutions that prove[d] to be futile once the virus had invaded [URF]."

> In determining that the Brooks and his co-plaintiffs failed to state an Eighth Amendment claim, the district court looked outside of the complaint and took judicial notice of information pertaining to the number of COVID-19 cases in MDOC facilities, as well as the measures announced by MDOC to limit the threat posed by COVID-19. *See MDOC Response and Information on Coronavirus (COVID-19)*, Mich. Dep't of Corr., https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337. District courts generally may not consider matters outside of the complaint at the dismissal stage, *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989), but limited exceptions do exist, such as facts subject to judicial notice, *see Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Under Federal Rule of Evidence 201(b)(2), district courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, however, the information in question came from MDOC and the implementation of the COVID-19 mitigation measures it announced is a matter of reasonable dispute. In fact, the plaintiffs specifically disputed some of that information in their complaint, alleging that, contrary to the quarantine measures announced by the MDOC, prison staff moved freely between the general population (consisting of uninfected prisoners) and isolation units housing COVID-positive prisoners. The

10, PageID 72–74 (recommending that Honzu be permitted to raise a claim concerning his treatment at RCI in an amended complaint)).

### 2. *Failure to Protect*

Honzu alleges that Defendant Spetnagel, a Lieutenant at RCI, was present and "allowed if not directed" an assault on him by another inmate in May 2021, which occurred after Spetnagel threatened that Honzu would be labelled a "snitch" and subjected to violence.  (Doc. 20, PageID 142).  The Undersigned **RECOMMENDS** that the Court allow Honzu to **PROCEED** at this time with this failure to protect claim against Lieutenant Spetnagel.

Honzu also alleges that Officer Anthony (also referred to as John Doe [6]), a Correctional Officer at RCI, told other inmates that Honzu was a "snitch" several months later.  (Doc. 20, PageID 147 (referring to harassment in August through December 2021)).  This allegation may also be intended to state a failure to protect claim.  As the Undersigned previously noted:

> "Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners."  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998)). The "Eighth Amendment's prohibition of cruel and unusual punishment . . . requires prison officials to take reasonable measures to guarantee the safety of the inmates." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 832; *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (internal quotation marks omitted).

(Doc. 10, PageID 69).

---

plaintiffs also alleged that COVID-positive members of the prison staff continued to work among the general population. Therefore, the district court erred when it relied upon information from outside the record that was not subject to judicial notice.

As for the district court's application of *Wilson*, that case concerned the issuance of a preliminary injunction after briefing and arguments, rather than the dismissal of a complaint upon initial screening. Thus, while Brooks may ultimately be unsuccessful is securing the relief he seeks, he has nevertheless put forth sufficient allegations that the defendants knew of and disregarded an excessive risk to inmate health or safety.

Accordingly, we **VACATE** the district court's judgment and **REMAND** for further proceedings.

*Brooks, supra.*

The Undersigned also noted that such a claim would fail where it does not allege any resulting harm to the plaintiff:

> Any failure to protect claim . . . based on the description of this November 21, 2021 incident would fail. There is no indication that these reported threats materialized and that Honzu was injured. Honzu does not allege, for example, that he was attacked that day or that he was otherwise physically injured following this incident. Without any physical injury, he does not state a claim for a failure to protect. *See Mitchell v. Washington*, No. 2:19-cv-10633, 2019 WL 2005916, at *3 (E.D. Mich. May 7, 2019) (and the cases cited therein) ("The major problem with plaintiffs [failure to protect] claim is that he was not actually physically assaulted at the Macomb Correctional Facility as a result of the defendants' alleged acts. To state a failure-to-protect claim, a plaintiff must allege physical injury.").

(Doc. 10, PageID 70). Honzu's failure to protect claim against Officer Anthony in the Amended Complaint also fails to allege that any injury resulted from Officer Anthony's statements about Honzu being a "snitch." (Doc. 20, PageID 147). The Undersigned therefore **RECOMMENDS** that the Court **DISMISS** this claim as raised against Officer Anthony.

### 3. *Other Eighth Amendment Claims*

Honzu alleges that Unit Manager Hyatt kicked him out of the merit dorm in retaliation for complaining about a COVID-19 cover up. (Doc. 20, PageID 137). Among other things, he labels these allegations a violation of the Eighth Amendment. (*Id.*). Honzu asserts that Thomas DePugh, a Correctional Officer at RCI, violated his rights under the Eighth Amendment. (Doc. 20, PageID 145). He alleges that DePugh planted contraband in his cell in retaliation and wrote a false conduct report. (*Id.*). Honzu similarly alleges that Officer Rosenberger, a Correctional Officer at RCI, wrote a false conduct report against him, which he labels a violation of the Eighth Amendment. (Doc. 20, PageID 146).

As discussed in Section III.B.1, Honzu's First Amendment retaliation claims against Hyatt, DePugh, and Rosenberger based on these allegations should proceed. But the Undersigned is unable to discern a plausible violation of the *Eighth Amendment* in these allegations. There is no

allegation that excessive force was used, that the physical conditions of confinement were unconstitutional, that Honzu was denied medical care by these defendants, or the like. Accordingly, the Undersigned **RECOMMENDS** that the Court **DISMISS** any Eighth Amendment claim against Hyatt, DePugh, and Rosenberger.

> ### D.      Fourteenth Amendment Claims

Honzu's Fourteenth Amendment claims in the Amended Complaint appear to arise from his allegations that certain prison staff wrote false conduct reports against him or resolved those reports without the benefit of due process at Rules Infraction Board ("RIB") hearings.  He raises these claims against John Doe [3], the Investigator at NCI, and Lieutenant Cobb, the RIB Lieutenant at NCI. (Doc. 20, PageID 134, 138).  Among the RCI Defendants, he raises a claim against Sergeant Lyons, the RIB Hearing Officer at RCI.  (Doc. 20, PageID 144).  Construing the Amended Complaint liberally, the Undersigned concludes that the set of claims against John Doe [3] and Cobb should proceed, but the claims against Lyons should be dismissed.

In his original Complaint, Honzu alleged that false conduct reports were written against him.  (*See, e.g.*, Doc. 8, PageID 42, 45, 46, 47).  Generally, this allegation alone does not state a claim under § 1983.  (*See* Doc. 10, PageID 77).  However, "to the extent that false accusations of misconduct implicate due process concerns, the false charges do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."  (*Id.* (citing *Brown v.McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (cleaned up))). Honzu previously alleged that the false report was reviewed without due process.  (*See* Doc. 10, PageID 78).

The Undersigned recommended that Honzu be permitted to file an Amended Complaint "and provid[e] this Court with additional details about [his] due process claim" that the

Investigator at NCI wrote him a false conduct report, which was resolved without the benefit of due process at a RIB hearing. (*See* Doc. 10, PageID 77–78). The Undersigned cited caselaw suggesting that "the minimum due process requirements for such a disciplinary hearing are: (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken." (*Id*., PageID 78, fn.5 (quoting *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at \*5, n.7 (N.D. Ohio July 19, 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974))). *See also Williams v. Wilkinson*, 51 F. App'x 553, 556 (6th Cir. 2002) ("prisoners only enjoy these procedures to the extent necessary to protect substantive rights").

Honzu raises this issue again in his Amended Complaint against John Doe [3], the Investigator at NCI. (Doc. 20, PageID 134). With respect to the alleged violation of due process at the RIB hearing, Honzu says that this Defendant "would not cooperate or answer questions during Honzu's in house (RIB) hearing." (*Id*.). Although not perfectly clear, the Undersigned construes this as an allegation that Honzu was denied "an opportunity to call witnesses and present evidence" in his favor. *See Roundtree*, 2019 WL 3252912, at \*5, n.7. Accordingly, the Undersigned **RECOMMENDS** that this Court permit Honzu to **PROCEED** at this time with his Fourteenth Amendment claim against John Doe [3], the Investigator at NCI for allegedly writing a false conduct report against him. (Doc. 20, PageID 134). The Undersigned expresses no opinion on the merits of this claim at this time.

Honzu also seeks to raise a Fourteenth Amendment claim directly against Lieutenant Cobb, the RIB Lieutenant at NCI who conducted the hearing. (Doc. 20, PageID 138). Honzu asserts that Cobb denied Honzu's witnesses and his ability to ask and have the NCI Investigator answer questions. (*Id*.). It appears that this is the hearing that led "to the increase of [Honzu's] security

level, *his fiancée being permanently restricted from visiting*, and a transfer from NCI to RCI."
(Doc. 10, PageID 78) (emphasis added).

> It is well-established that:
>
> The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. "[T]hose who seek to invoke its procedural protections must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will "inevitably" affect the duration of an inmate's sentence or inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

*Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2–3 (6th Cir. July 28, 2022).  In this context, the Sixth Circuit appears to have accepted that "permanently restricting a prisoner's visitation with a spouse *may* present an atypical and significant hardship even in the prison context."  *Id*. (emphasis in original).  Accordingly, the Undersigned **RECOMMENDS** that the Court allow Honzu's Fourteenth Amendment claim against Lieutenant Cobb to **PROCEED** at this time.

Honzu's Fourteenth Amendment claim against Sergeant Lyons, the RIB Hearing Officer at RCI, is different.  (Doc. 20, PageID 144).  Honzu has not pled sufficient facts with respect to this hearing and what resulted from this hearing to plausibly state a claim on which relief may be granted.  He does not allege he received any particular punishment at the hearing that could be classified as an atypical and significant hardship, and the Undersigned cannot place the hearing within any previous allegations to infer that such a punishment was imposed.  (*Id*.).

With respect to Sergeant Lyon, Honzu alleges only that she denied his witnesses as irrelevant, denied his request for camera footage, and denied him a defense.  (Doc. 20, PageID 144).  While these allegations go to what process Honzu believes was due, he has failed to articulate the precursor to such a claim:  a protected liberty interest with which the disciplinary

process interfered. *See Williams v. Wilkinson*, 51 F. App'x 553, 556 (6th Cir. 2002) ("If none of the adverse consequences he alleges infringe a liberty interest that due process protects, then Plaintiff's claims must fail."). Accordingly, the Undersigned **RECOMMENDS** that the Court **DISMISS** Honzu's Fourteenth Amendment claim against Sergeant Lyons. (Doc. 20, PageID 144).

Honzu also says that he raises a Fourteenth Amendment claim against John Doe [1], Chief Inspector for the ODRC (Doc. 20, PageID 131), and Lieutenant Spetnagel (Doc. 20, PageID 142). It is not apparent from his allegations what claims or type of claims he seeks to raise in this respect. The Undersigned therefore also **RECOMMENDS** that the Court **DISMISS** any Fourteenth Amendment claims against John Doe [1] and Lieutenant Spetnagel. *See Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (courts "are not required to conjure up allegations not pleaded or guess at the nature of an argument.").

### E.  Other Claims

#### 1.  Grievance Procedure / Failure to Investigate

Honzu alleges that John Doe [1], the Chief Inspector of the ODRC, failed to investigate his appeals, failed to question witnesses, and failed to access camera footage. (Doc. 20, PageID 131). He also alleges that this defendant failed to protect him from "ongoing policy violations and abuse from staff members to who continued to subject Honzu to false write ups and unwarranted punishment." (*Id.*).

He further alleges that Todd Diehl, the Institutional Inspector at RCI, failed to investigate his complaints and denied him access to the institutional grievance procedure. (Doc. 20, PageID 139). As the Undersigned previously said:

> In general, claims that a prison official limited access to the institutional grievance procedure, or failed to take action on an inmate's grievance, or denied an inmate's grievance, cannot succeed in a § 1983 action. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (affirming the dismissal of a § 1983

claim concerning limited access to the grievance procedure because there is no "constitutional right to unfettered access to a grievance procedure"); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) (The mere denial of a prisoner's grievance states no claim of constitutional dimension.").

This is because a § 1983 claim requires a plaintiff to allege the deprivation of a *constitutional* right. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001). But "there is no inherent constitutional right to an effective prison grievance procedure," or "to unfettered access to a grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Walker*, 128 F. App'x at 445. Without a constitutional right to point to, a plaintiff cannot allege the deprivation of a constitutional right. Accordingly, [defendant] cannot be held liable under § 1983 for not allowing Honzu to access the grievance procedure or for failing to act on his attempted grievances.

(Doc. 10, PageID 67–68).

Courts have also specifically held that a failure to investigate another person's alleged constitutional violation "do[es] not constitute 'active constitutional behavior' as required [for a claim] and thus, [is] not actionable" under § 1983. *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). This Court has dismissed similar claims for failure to investigate:

> The complaint should also be dismissed to the extent that plaintiff seeks to hold any defendant liable in connection with the grievance process or investigation of his claims. Plaintiff claims that Barney failed to view the camera footage...and that defendant Sparks failed to take corrective action with respect to officers' actions despite plaintiff's claim that he notified Sparks of his issues through the grievance procedure....However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). . . . Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff's claims that Barney, Sparks, or any other defendant failed to

19

investigate the incident or take corrective action should be dismissed for failure to state a claim upon which relief may be granted.

*Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *4 (S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021).

The Undersigned **RECOMMENDS** that the Court **DISMISS** the claims concerning the grievance procedure and John Doe [1] and Todd Diehl's alleged failure to investigate.

### 2. Property Loss

Honzu alleges in his Amended Complaint that John Doe [3], the Investigator at NCI, "allowed Honzu's property to be missing or stolen while he was placed Honzu in segregation." (Doc. 20, PageID 134).  He also alleges that Officer Anthony (also referred to as John Doe [6]), a Correctional Officer at RCI, broke his TV.  (Doc. 20, PageID 147).

This Undersigned recommended dismissing the same or similar claims when Honzu made them in his original Complaint:

> Honzu alleges that some items of his personal property "came up missing" at RCI in September 2020 when he was placed in segregation.  (Doc. 8, PageID 44, 42, 45).  He also alleges that an officer at RCI broke his TV.  (Doc. 8, PageID 49).  In order to state a claim "for destruction of personal property under the Fourteenth Amendment," a plaintiff must "plead . . . that state remedies for redressing the wrong are inadequate."  *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).  *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  Here, Honzu has not pled this required element in his Complaint but has simply alleged that his property went missing or was broken.  These bare allegations fail to state a claim.  *See Darling v. Lake Cnty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cnty. Com'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007)) (a plaintiff "does not state a due process claim merely by alleging the deprivation of property").  The Undersigned notes that these allegations may be relevant to an amended retaliation claim, but that they do not independently state a claim under the Fourteenth Amendment.

(Doc. 10, PageID 78–79).  Honzu has not pled the required elements in his Amended Complaint either.  (Doc. 20, PageID 134, 147).  Accordingly, the Undersigned again **RECOMMENDS** that

the Court **DISMISS** his claims for the loss of personal property against John Doe [3], the Investigator at NCI, and Officer Anthony (also referred to as John Doe [6]), a Correctional Officer at RCI.

### 3. *Threats and Harassment*

Honzu alleges that John Doe [1], the Chief Inspector of the ODRC, threatened Honzu that if he continued to complain, he would be subject to disciplinary action and would be unable to continue using the informal complaint and grievance procedures.  (Doc. 20, PageID 131).  As Honzu does not allege that John Doe [1] actually took any disciplinary action against him, his claim in this respect appears to be based on the alleged threats themselves.  (*Id.*).

Honzu also alleges that Officer Anthony (also referred to as John Doe [6]), a Correctional Officer at RCI, threatened and harassed him.  (Doc. 20, PageID 147).  This is in part the basis of Honzu's retaliation claim against Officer Anthony as discussed in Section III.B.1.

Allegations of threats and harassment, while possibly relevant to other claims, do not independently state a claim on which relief may be granted.  "Harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation." *Mallory v. Smith,* No. 3:17-cv-P253, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").  Likewise, "verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment."  *Snelling v. Smith*, No. 1:16-cv-656, 2016 WL 6518264, at *6 (W.D. Mich. Nov. 3, 2016) (citing *Ivey*, 832 F.2d at 955).  The Undersigned **RECOMMENDS** that this Court **DISMISS** any freestanding

claim based on threats and harassment against John Doe [1], the Chief Inspector of the ODRC, and Officer Anthony (also referred to as John Doe [6]), a Correctional Officer at RCI.  However, this recommendation does not change the recommendation above that Honzu's retaliation claim against Officer Anthony (also referred to as John Doe [6]), be allowed to proceed.  (*See* Section III.B.1).

### 4. *"COVID-19 Cover Up" – Civil Conspiracy*

Honzu alleges that three defendants took part in a "Covid-19 Cover Up" at NCI:  John or Jane Doe [2], the Medical Supervisor at NCI; John Doe [3], the Investigator at NCI; and Mr. Hyatt, the Unit Manager at NCI.  (Doc. 20, PageID 132, 134, 137).  The alleged purpose of the cover up was "to [d]eny that inmates encluding [sic] Marcus L. Honzu was sick was Covid-19."  (Doc. 20, PageID 132).  Honzu appears to have raised these same allegations as part of his retaliation claims (*see* Section III.B.1) and his deliberate indifference claims (*see* Section III.C.1), but he may have also intended to raise the allegations as a civil conspiracy claim.

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action."  *Crowley v. Anderson Cnty., Tenn.*, 783 F. App'x 556, 560 (6th Cir. 2019) (internal citations and quotations omitted).  "To prevail on a civil conspiracy claim, [a plaintiff] must show that (1) a "single plan" existed, (2) [the defendant] "shared in the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused the injury" to [the plaintiff].  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

"The Sixth Circuit has warned that 'conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be

sufficient to state such a claim under § 1983.'" *Ayers v. Gabis*, No. 20-11735, 2021 WL 4316853, at *6 (E.D. Mich. Sept. 23, 2021) (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). "These guidelines have led the court to conclude that the 'pleading requirements governing civil conspiracies are relatively strict.'" *Id*.

The allegations in the Amended Complaint here do not plausibly allege a civil conspiracy. (Doc. 20, PageID 132, 134, 137). Beyond Honzu's *conclusion* that a cover up existed, there are no *facts* pled from which the Court could find such a plan or agreement. Labelling something as a conspiracy or cover up is not enough. *See Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 556 (2007)) (a complaint that consists of "labels and conclusions" is insufficient); *Regets v. City of Plymouth*, 568 F. App'x 380, 391 (6th Cir. 2014) (citing *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989)) ("mere speculation and conjecture are insufficient to establish the existence of an agreement" for a conspiracy claim).

The Undersigned therefore **RECOMMENDS** that any conspiracy claim against John or Jane Doe [2], the Medical Supervisor at NCI; John Doe [3], the Investigator at NCI; and Mr. Hyatt, the Unit Manager at NCI, be **DISMISSED**. Honzu's allegations in this regard are better pursued in the context of his retaliation and deliberate indifference claims. (*See* Sections III.B.1 and III.C.1).

## IV.    Proceeding Further Against John or Jane Doe Defendants

"Although designation of a 'John Doe' or 'unknown' defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery." *Robinson v. Doe*, No. 1:07-cv-729, 2009 WL 650383, at *2 (S.D. Ohio March 10, 2009) (collecting cases); *accord Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *3 (M.D. Tenn. Mar. 25, 2020)

(determining that "it would be inappropriate to dismiss the claims against the John Doe Defendants at this juncture because of the likelihood that the identities of these Defendants will be determined during discovery").

Once Honzu discovers the name of the John or Jane Doe Defendants, he will be required to timely amend his Complaint to identify them. *See generally* Fed. R. Civ. P. 15 (concerning amended and supplemental pleadings and when leave is required to amend); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (concerning the addition of new parties and the statute of limitations).

In addition, service of process on any newly-identified John or Jane Doe defendant must be completed in accordance with Fed. R. Civ. P. 4(m), which states: "Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

**Honzu should not delay in proceeding against these Defendants.**

## V. Summary and Conclusion

Having screened the Amended Complaint under 28 U.S.C. §§ 1915A(a) and 1915(e)(2), the Undersigned **RECOMMENDS** that the Court allow the following claims to **PROCEED** to further development at this time:

1. The First Amendment retaliation claims against Defendants John Doe [3], Hyatt, Diehl, Spetnagel, Lyons, DePugh, Rosenberger, and Anthony (also referred to as John Doe [6]). (*See* Section III.B.1).

2. The First Amendment interference with privileged legal mail claim against Defendants John Doe [3] and John or Jane Doe [4]. (*See* Section III.B.2).

3. The Eighth Amendment <u>deliberate indifferent to serious medical needs claims</u> against Defendants John or Jane Doe [2] and John or Jane Doe [5]. (*See* Section III.C.1).

4. The Eighth Amendment <u>failure to protect claim</u> against Defendant Spetnagel. (*See* Section III.C.2).

5. The Fourteenth Amendment <u>due process claims</u> against Defendants John Doe [3] and Cobb. (*See* Section III.D).

Organized another way, the following twelve Defendants should remain in this case, in their individual capacities:

- John or Jane Doe [2] – Medical Supervisor at NCI (deliberate indifference)
- John Doe [3] – Investigator at NCI (retaliation, legal mail, due process)
- John or Jane Doe [4] – Mailroom Supervisor at NCI (legal mail)
- Mr. Hyatt – Unit Manager at NCI (retaliation)
- Mr. Cobb – RIB Lieutenant at NCI (due process)
- Todd Diehl – Inspector at RCI (retaliation)
- John or Jane Doe [5] – Medical Supervisor at RCI (deliberate indifference)
- Mr. Spetnagel – Lieutenant at RCI (retaliation, failure to protect)
- Ms. Lyons – Sergeant/RIB Hearing Officer at RCI (retaliation)
- Thomas DePugh (or Depugh) – Correctional Officer at RCI (retaliation)
- Mr. Rosenberger – Correctional Officer at RCI (retaliation)
- John Doe [6] (Officer Anthony) – Correctional Officer at RCI (retaliation)

The Undersigned expresses no opinion on the merits of these claims at this time.

The Undersigned **RECOMMENDS** that the Court **DISMISS** the remaining claims, which includes the following:

A.  All official capacity claims for monetary damages.  (*See* Section III.A).

B.  The First Amendment retaliation claim against Defendants John Doe [1], John or Jane Doe [4], Cobb, and John or Jane Doe [5].  (*See* Section III.B.1).

C.  The access to courts claim and the violation of state policy claim concerning legal mail against John Doe [3] and John or Jane Doe [4].  (*See* Section III.B.2).

D.  The Eighth Amendment failure to protect claim against Defendant Anthony (also referred to as John Doe [6]).  (*See* Section III.C.2).

E.  The unarticulated Eighth Amendment claims against Defendants Hyatt, DePugh, and Rosenberger.  (*See* Section III.C.3).

F.  The Fourteenth Amendment due process claims against Defendants Lyons. (*See* Section III.D).

G.  The unarticulated Fourteenth Amendment claims against Defendants John Doe [1] and Spetnagel.  (*See* Section III.D).

H.  The claims based on the grievance procedure and alleged failure to investigate against Defendants John Doe [1] and Diehl.  (*See* Section III.E.1).

I.  The property loss claims against Defendants John Doe [3] and Anthony.  (*See* Section III.E.2).

J.  The threat and harassment claims against Defendants John Doe [1] and Anthony (except to the extent that the retaliation claim against Defendant Anthony refers to such threats).  (*See* Section III.E.3).

K.  The civil conspiracy claim against Defendants John or Jane Doe [2], John Doe [3], and Hyatt.  (*See* Section III.E.4).

As no claims remain against Defendant John Doe [1] – Chief Investigator of the ODRC, he should be dismissed from the case.

The Undersigned notes that the Court is in receipt of the summons forms and United States Marshal forms (USM-285) for the two of the eight identified defendants—Defendants DePugh and Diehl. (*See* Doc. 21). The Clerk of Court issued the summons to Defendants DePugh and Diehl on May 10, 2023. (*See* Doc. 22). Honzu is **ORDERED** to provide to the Clerk with summons forms and United States Marshal forms (USM-285) for the remaining six identified Defendants (Hyatt, Cobb, Spetnagel, Lyons, Rosenberger, and Anthony) **WITHIN TWENTY-ONE DAYS**. The forms for the John or Jane Doe Defendants will be required as soon as these Defendants are identified.

Finally, Honzu is reminded that he must keep this Court informed of his current address and promptly file a notice of his new address if he is released or transferred.

## VI. Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**


Date:  May 17, 2023                                    /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE