# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MARCUS HONZU,

    **Plaintiff,**

   v.

JOHN DOE [1] – CHIEF INSPECTOR OF
ODRC, *et al.*,

    **Defendants.**

      **Case No. 2:22-cv-292**
      **Chief Judge Algenon L. Marbley**
      **Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Hyatt, Cobb, Diehl, Spetnagel, Lyons, DePugh, Rosenberger, Anthony, and Jane and John Does' Motion to Dismiss for Failure to State a Claim (Doc. 30). For the following reasons, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 30) be **GRANTED in part and DENIED in part**. The Undersigned **RECOMMENDS** that Plaintiff's First Amendment retaliation claims against Defendant Hyatt, Defendant Spetnagel, and Defendant Anthony; his First Amendment interference with privileged legal mail claims against Defendant mailroom supervisor John Doe 3 and Defendant investigator John or Jane Doe 4; and his Eighth Amendment failure to protect claim against Defendant Spetnagel **PROCEED**. The Undersigned further **RECOMMENDS** that Plaintiff's remaining First Amendment retaliation claims, Eighth Amendment deliberate indifference to serious medical needs claims, and Fourteenth Amendment due process claims be **DISMISSED**.

## I.  BACKGROUND

Plaintiff Marcus Honzu, currently incarcerated and proceeding *pro se*, brought this action under 42 U.S.C. § 1983 against Noble Correctional Institution ("NCI") employees Hyatt and Cobb;

Ross Correctional Institution ("RCI") employees Todd Diehl, Spetnagel, Lyons, Thomas DePugh, Rosenberger, and Anthony; and John or Jane Does employed by NCI or RCI.  (Amended Complaint, Doc. 20).  On an initial screen, the Court dismissed all claims against a John Doe Chief Investigator of the Ohio Department of Rehabilitation and Corrections ("ODRC") ("John Doe 1"). (Doc. 23 at 24–27; *see* Doc. 31).  The Court also dismissed all claims against the remaining Defendants in their official capacities for monetary damages.  (*Id.*).

Now, Defendants have moved to dismiss Plaintiff's remaining claims for failure to state a claim.  (Doc. 30).  The Motion has been briefed and is ripe for review (Docs. 41, 45).

## II.    STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true.  *Twombly*, 550 U.S. at 556–57.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations).  In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Further, although *pro se* complaints are construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Said differently, "[t]he requirement for liberal construction ... does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012) (dismissing *pro se* plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases).  The complaint must still "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

## III.    DISCUSSION

Plaintiff's remaining claims include: (1) First Amendment retaliation claims against Defendants John Doe 3, Hyatt, Diehl, Spetnagel, Lyons, DePugh, Rosenberger, and Anthony; (2) First Amendment interference with privileged legal mail claims against Defendants John Doe 3 and John or Jane Doe 4; (3) Eighth Amendment deliberate indifference to serious medical needs claims against Defendants John or Jane Doe 2 and John or Jane Doe 5; (4) an Eighth Amendment failure to protect claim against Defendant Spetnagel; and (5) Fourteenth Amendment due process claims against Defendants John Doe 3 and Cobb.  (Docs. 23, 31).

### A.  First Amendment Retaliation Claims

Plaintiff alleges multiple instances of retaliation.   Retaliation against a prisoner for exercising his constitutional rights violates the Constitution. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff; and (3) the adverse action was at least partially motivated by the plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. "An adverse action is one that is '*capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (emphasis in original) (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citation and internal quotation marks omitted)). Courts have recognized the difficulty of "producing direct evidence of an official's retaliatory motive, [so] circumstantial evidence can suffice." *Id.* at 475 (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525–26, (6th Cir. 2010)). Examples of circumstantial evidence include "disparate treatment of similarly situation individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id.* at 475–476 (citing *Thaddeus–X*, 175 F.3d at 399).

Plaintiff's engagement in "filing a non-frivolous grievance[s] against prison personnel is protected conduct under the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.") (quoting *Herron*, 203 F.3d at 415) (internal quotation marks omitted). Each of Plaintiff's retaliation claims are discussed in turn.

### i.    Defendant John Doe 3

Plaintiff says that a John Doe investigator at NCI ("John Doe 3") retaliated against him by writing a false conduct report on September 25, 2020, "in an attempt to have [Plaintiff] punished for complaining on staff members about a Covid-19 coverup at [NCI] in 2020." (Doc. 20 at 6).

Defendants argue that Plaintiff did not provide enough facts to plead a causal link between Plaintiff's complaint and John Doe 3's actions.  (Doc. 30 at 3–4).

Here, Plaintiff set forth sufficient facts to plead that he engaged in protected conduct by filing complaints about NCI's approach to the COVID-19 pandemic.  *See Stephenson v. Black*, 887 F.2d 1088 Table (6th Cir. 1989) ("Although [plaintiff] has no protected interest in placement in a particular institution, he does have a protected right to complain about the conditions of the jail.").  And while being subject to a hearing and sanctions based on a false conduct report is likely capable of deterring a person of ordinary firmness from continuing to file complaints, *Bell*, 308 F.3d at 606, Plaintiff fails to allege a causal connection between the false conduct report and his complaints.  *Thaddeus-X*, 175 F.3d 378, 399.

Plaintiff must provide facts on which the Court can infer a retaliatory motive, not just his own speculation that an adverse action taken was in response to protected conduct.  *Cf. Hill*, 630 F.3d at 476 (finding on a motion to dismiss retaliatory motive when the plaintiff alleged that an adverse action occurred "right after" he filed a complaint, others were treated similarly when they filed complaints, and an officer made comments about the adverse action).  And without any "further factual enhancement," Plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief.  *Twombly*, 550 at 555–57; *see also Whiteside v. Collins*, No. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal, noting that "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim"), *report and recommendation adopted*, No. 2:08-CV-875, 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010), *aff'd* (Apr. 17, 2014).  As such, the Undersigned **RECOMMENDS** that the First Amendment retaliation claim against John Doe 3 be **DISMISSED**.

###### ii.     Defendant Hyatt

Plaintiff says that in June 2020, Defendant Hyatt, a unit manager at NCI, retaliated against him by telling him that "he was causing major issues in the dorm by complaining of a COVID-19 coverup" and then "kicking him out of the merit dorm d[e]spite [Plaintiff] not violating any prison rules." (Doc. 20 at 9). Plaintiff says this action removed him from "merit status." (*Id.*). Defendants argue that Plaintiff does not provide facts that Hyatt knew about Plaintiff's complaints or any connection between Plaintiff's conduct and the alleged retaliatory actions. (Doc. 30 at 4–5).[1]

For the same reasons as above, Plaintiff has pled sufficient facts that he was involved in protected conduct by filing complaints about NCI's approach to the COVID-19 pandemic. Plaintiff also adequately alleges that an adverse action was taken against him, as "an action comparable to transfer to administrative segregation would certainly be adverse." *Thaddeus–X*, 175 F.3d at 396; *see Hill*, 630 F.3d at 474 ("[A]ctions that result in more restrictions and fewer privileges for prisoners are considered adverse."). Construing the Amended Complaint in the light most favorable to Plaintiff, the Undersigned infers that removal from a merit dorm and loss of merit status increased Plaintiff's restrictions and decreased his privileges. (*See* Doc. 20 at 9). And Plaintiff also sufficiently alleges facts of a causal connection between Plaintiff's complaints about NCI's approach to the COVID-19 pandemic and Hyatt's adverse action. Specifically, Plaintiff alleged that Hyatt kicked Plaintiff out of the merit dorm after a having a conversation with him about "causing major issues in the dorm" because of Plaintiff's complaints, which suggests temporal proximity and direct evidence of a retaliatory motive. (Doc. 20 at 9); *see Hill*, 630 F.3d

---

[1] To the extent that Defendants argue this issue should be dismissed because the alleged retaliation may have taken place outside of the two-year statute of limitations for § 1983 claims, the Undersigned expresses no opinion without the benefit of discovery.

at 476.  Therefore, when construed liberally, Plaintiff's Amended Complaint sufficiently alleges all three elements of a retaliation claim against this Defendant.  Accordingly, the Undersigned **RECOMMENDS** that the First Amendment retaliation claim against Defendant Hyatt **PROCEED**.

### iii.  Defendant Diehl

Next, Plaintiff alleges that Defendant Diehl, an institutional inspector at RCI, retaliated against him when Plaintiff "began to complain about innappropriate [sic] actions of staff members at RCI." (Doc. 20 at 11).  He says when he filed these complaints, Diehl was "derilic [sic] in his duties" and would not question witnesses, look at camera footage, or allow additional time for Plaintiff to document the complaints.  (*Id.*).  Diehl then allegedly denied Plaintiff access to the complaint system, denied him access to files of staff members, told lies about him, charged him for services, denied his requests to send information to the courts, and did not respond to his requests for meetings.  (*Id.*).  Defendants argue that Plaintiff failed to allege facts that Diehl retaliated against Plaintiff because of his protected conduct.  (Doc. 30 at 5).  The Undersigned agrees.

Although Plaintiff's non-frivolous filing of complaints is protected conduct under the First Amendment, Plaintiff does not properly allege that any action Diehl engaged in was an adverse action causally connected to Plaintiff's complaints.  *Thaddeus-X*, 175 F.3d at 399.  Put differently, Plaintiff has not provided facts that allege Diehl took any of the described actions because of Plaintiff's engagement in the complaint process.  As previously stated, calling conduct retaliatory is not enough to plead the third element of a retaliation claim.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (a complaint that consists of "labels and conclusions" is insufficient));

*Whiteside*, 2009 WL 4281443, at *9.   So, the Undersigned **RECOMMENDS** that the First Amendment retaliation claim against Defendant Diehl be **DISMISSED**.

### iv.      Defendant Spetnagel

Plaintiff claims that Defendant Spetnagel, a lieutenant at RCI, retaliated against him by threatening that if Plaintiff did not "stop complaining against staff members[,] Plaintiff would be subjected to gang violence by a violent prison gang at RCI," in January 2021.  (Doc. 20 at 14). And in August 2021, Spetnagel threatened, "if [Plaintiff] knew what was good for him[,] he would not remain in RCI population another day[,]" because "[Plaintiff] would not drop his complaints against staff members at RCI."  (*Id.* at 15).  Defendants argue that Plaintiff does not sufficiently allege the facts or substance of his complaints against Spetnagel, does not allege a causal link between Plaintiff's protected conduct and the alleged adverse action, and merely alleges the "ultimate fact of retaliation."  (Doc. 30 at 5; Doc. 45-1 at 3).

While true that Plaintiff does not specifically allege that these complaints were non-frivolous, the Undersigned construes his allegations in the light most favorable to him at this early stage to infer that he was engaged in protected conduct when he filed his complaints.  *See Hill*, 630 F.3d at 472; *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007).   Concerning the second element, "[a] specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising [his] First Amendment rights."  *Hunter v. Palmer*, No. 1:17-CV-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) (citing *Thaddeus-X*, 175 F.3d at 396, 398).  If his allegation is true, Spetnagel's threat that Plaintiff would be subjected to physical harm from gang violence if he does not cease his complaints meets this standard.  *See Thaddeus-X*, 175 F.3d at 398 ("Harassment, physical threats . . . would likely have a strong deterrent effect."); *Dykes v. Becks*, No. 2:22-CV-109, 2022 WL 2965478, at *4 (W.D. Mich. July

27, 2022) ("If [Defendant] had directly threatened Plaintiff with physical harm by way of a prisoner assault, that would clearly be adverse action.").

More still, unlike what Defendants contend, Spetnagel's alleged threat that he would subject Plaintiff to gang violence is more specific than threats courts in this Circuit have previously found too vague to survive a motion to dismiss or initial screen.  *See, e.g.*, *Harris v. Sowers*, No. 2:16-CV-888, 2020 WL 6823117, at *3 (S.D. Ohio Nov. 20, 2020) (adopting the Magistrate Judge's recommendation that "Oh yeah? It's going to suck to be you" was too vague a threat to be considered an adverse action), *amended*, No. 2:16-CV-888, 2022 WL 1637564 (S.D. Ohio May 24, 2022); *Hunter*, 2017 WL 1276762, at *11 (holding a threat that "complaining would get [Plaintiff] into a lot of trouble" was too vague and unspecified to form an adverse action); *Snelling v. Gregory*, No. 1:17-CV-P41-GNS, 2017 WL 2602591, at *3 (W.D. Ky. June 14, 2017) (holding a threat that "'this was not over and that [Defendant] would get [Plaintiff]' is too vague to constitute an adverse action."); *Smith v. Mohr*, No. 2:15-CV-1264, 2016 WL 1322347, at *8 (S.D. Ohio Apr. 5, 2016) (holding plaintiff's allegation that a corrections officer threatened him with retaliatory punishment was too non-specific to be an adverse action), *report and recommendation adopted*, No. 2:15-CV-1264, 2016 WL 3034496 (S.D. Ohio May 26, 2016); *but see George v. Bookie*, No. 1:23-CV-970, 2023 WL 6210829, at *3 (W.D. Mich. Sept. 25, 2023) (holding a threat that "[w]e do not care[,] you will do what we want you to do or we will kill you" followed by a derogatory racial epithet was not an adverse action on an initial screen).  And Plaintiff sufficiently alleges a causal connection at this early stage between Spetnagel's threat and a retaliatory motive when he alleged that the reason provided by Spetnagel for the threat itself was Plaintiff's engagement in the complaint process.  (Doc. 20 at 14).  Therefore, when construed liberally, this part of Plaintiff's Amended Complaint sufficiently alleges all three elements of a retaliation claim.

But Spetnagel's other alleged threat that Plaintiff would not remain in RCI population if he knew what was good for him is too vague a threat to constitute an adverse action. *See, e.g.*, *Harris*, 2020 WL 6823117, at * 3; *Hunter*, 2017 WL 1276762, at *11; *Snelling*, 2017 WL 2602591, at *3; *Smith*, 2016 WL 1322347, at *8. As such, the Undersigned **RECOMMENDS** that the First Amendment retaliation claim against Defendant Spetnagel **PROCEED** to the extent that it addresses Spetnagel's threat of gang violence against Plaintiff for filing complaints against staff members.

### v. Defendant Lyons

Plaintiff claims that Defendant Lyons, a Rules and Infraction Board ("RIB") hearing officer at RCI, retaliated against him in May 2021 for filing complaints against staff members by denying him access to witnesses, camera footage, and a defense during a disciplinary hearing on false conduct charges. (Doc. 20 at 16). Defendants argue that Plaintiff fails to allege any of the required elements of a retaliation claim. (Doc. 30 at 6). Although Plaintiff's non-frivolous filing of complaints is protected conduct, Plaintiff does not allege a causal connection between his filing of complaints and Lyons's actions during the disciplinary hearing. *Thaddeus-X*, 175 F.3d at 399. Simply put, Plaintiff has not provided facts that allege Lyons took any of the described actions because of Plaintiff's engagement in the complaint process. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). As such, the Undersigned **RECOMMENDS** that the First Amendment retaliation claim against Defendant Lyons be **DISMISSED**.

### vi. Defendants DePugh and Rosenberger

Plaintiff claims that in April 2021, Defendants DePugh and Rosenberger, both correctional officers at RCI, retaliated against him for filing complaints against staff members. (Doc. 20 at 17–18). Specifically, DePugh retaliated by "planting drugs and a cellphone in [Plaintiff's] cell" and

10

by writing a false conduct report for Plaintiff's possession of the planted items. (*Id.* at 17). And Rosenberger retaliated against him by also writing a false conduct report that the drugs were found in Plaintiff's cell during a shakedown. (*Id.* at 18). Defendants argue that both allegations are devoid of facts suggesting a retaliatory motive or causal connection. (Doc. 30 at 6). Although Plaintiff's non-frivolous filing of complaints is protected First Amendment conduct, Plaintiff once again does not allege a retaliatory motivation between his filing of complaints and either DePugh or Rosenberger's actions or provide facts from which the Undersigned can infer such a motive. *Thaddeus-X*, 175 F.3d at 399. He simply labels DePugh and Rosenberger's behavior as retaliatory, which is not enough. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Whiteside*, 2009 WL 4281443, at *9. The Undersigned **RECOMMENDS** that the First Amendment retaliation claims against Defendants DePugh and Rosenberger be **DISMISSED**.

### vii.    Defendant Anthony

Between August 2021 and December 2021, Plaintiff says that Defendant Anthony, a correctional officer at RCI, threatened to write false conduct reports about Plaintiff and to have Plaintiff assaulted if he "continued to complain about the actions of staff members at RCI" and about Anthony personally. (Doc. 20 at 19). Defendants argue that the threat does not constitute an adverse action and that Plaintiff does not allege facts about his complaints or a retaliatory motive. (Doc. 30 at 7). As previously stated, Plaintiff's engagement in the process of filing non-frivolous grievances is protected conduct, and the Undersigned construes his allegations in the light most favorable to him at this early stage to infer his grievances were not frivolous. *See Hill*, 630 F.3d at 472; *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). And "[a] specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising [his] First Amendment rights." *Hunter*, 2017 WL 1276762, at *11 (citing

11

*Thaddeus-X*, 175 F.3d at 396, 398). Taking Plaintiff's version of events as true, Anthony's threat that Plaintiff would be subjected to physical harm from an assault if he did not cease his complaints meets this standard. *See Thaddeus-X*, 175 F.3d at 398 ("Harassment, physical threats . . . would likely have a strong deterrent effect."); *cf. Dykes*, 2022 WL 2965478, at *4 ("If [Defendant] had directly threatened Plaintiff with physical harm by way of a prisoner assault, that would clearly be adverse action."). And while Anthony's threat to have Plaintiff assaulted is arguably vaguer than Spetnagel's threat to have Plaintiff subjected to prison gang violence, Anthony's threat of physical violence is still more specific than other threats found too vague to constitute adverse actions at this stage of litigation. *Harris*, 2020 WL 6823117, at * 3; *Hunter*, 2017 WL 1276762, at *11; *Snelling*, 2017 WL 2602591, at *3; *Smith*, 2016 WL 1322347, at *8.

Finally, Plaintiff sufficiently alleges a causal connection at this early stage when he claimed that the motivation provided by Anthony for the threat itself was Plaintiff's engagement in the complaint process both generally and about him specifically. (Doc. 20 at 19). Therefore, when construed liberally, Plaintiff's Amended Complaint alleges all three elements of a retaliation claim against this Defendant. As such, the Undersigned **RECOMMENDS** that the First Amendment retaliation claim against Defendant Anthony **PROCEED**.

### B. First Amendment Interference with Privileged Legal Mail Claims

Plaintiff next alleges multiple incidents of Defendants opening his legal mail despite his request that it be opened in his presence. "A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)). "However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First

Amendment rights." *Id.* at 873–874.  When a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts ....")).  "In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open 'legal mail' and inspect it for contraband in the presence of the prisoner." *Id.* at 874 (citation omitted).

Plaintiff alleges that NCI's John Doe 3 and John or Jane Doe 4 impermissibly opened his legal mail outside of his presence in September and November 2020.  (Doc. 20 at 6, 8).  Plaintiff says that "the inspector" granted Plaintiff's grievance for a legal mail policy violation and "advised" John or Jane Doe 4 "regarding this issue," but the behavior did not stop.  (*Id*. at 8).  Defendants argue that Plaintiff has not sufficiently alleged facts that his legal mail being opened outside of his presence violated his constitutional rights.  (Doc. 30 at 7–8).  The Court previously dismissed "any access-to-courts claim or claim based solely on the violation of ODRC policy" on these alleged facts.  (Doc. 23; *see* Doc. 30).  So, the Undersigned analyzes these claims for interference with Plaintiff's privileged legal mail under the First Amendment.

Whether a piece of mail is "legal mail" is a question of law.  *Sallier*, 343 F.3d at 873.  At this early stage and without the benefit of discovery, the Court takes Plaintiff at his word that the mail in question was "legal mail," particularly given that he alleged these claims against specific

defendants with mailroom access and NCI granted his grievance of an ODRC legal mail policy violation.  *Cf. Hall v. Smith*, No. 2:21-CV-1135, 2021 WL 3929827 (S.D. Ohio Sept. 2, 2021) (denying a prisoner's request that the Court issue an order preventing staff from opening and withholding his legal mail when he did not provide facts relating to what the mail was or who opened it), *report and recommendation adopted*, No. 2:21-CV-1135, 2022 WL 969557 (S.D. Ohio Mar. 31, 2022), *and objections overruled sub nom. Hall v. Chambers-Smith*, No. 2:21-CV-1135, 2022 WL 4298205 (S.D. Ohio Sept. 19, 2022).  And, for the same reason, the Undersigned infers that Plaintiff previously requested his incoming legal mail be opened in his presence.  This does not mean that the Court will ultimately conclude that Plaintiff's mail was legal mail or that he requested his legal mail be opened in his presence.  The Court leaves that to be established in discovery.

Further, contrary to Defendants' assertion, Plaintiff's Amended Complaint does not expressly state that John Doe 3 opened his legal mail in only one instance.  (Doc. 30 at 7, citing *Glass v. Ramos*, No. 3:19-CV-P714-DJH, 2021 WL 3008602, at *4 (W.D. Ky. July 15, 2021) (citation omitted); *see* Doc. 20 at 6 ("John Doe violated institutional policy . . . when he opened [Plaintiff's] alleged legal [mail] outside of his presence . . . .")).  And "[e]ven opening a handful of privileged letters . . . violates an inmate's clearly established constitutional right under the First Amendment."  *Salem v. Warren*, 609 F. App'x 281, 283 (6th Cir. 2015) (citations omitted). Consequently, the Undersigned **RECOMMENDS** that these claims against John Doe 3 and John or Jane Doe 4 **PROCEED**.

### C.  Eighth Amendment Deliberate Indifference to Serious Medical Needs Claims

Plaintiff alleges that two Defendants were deliberately indifferent to his serious medical needs.  Prison officials are forbidden from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle*, 429 U.S. at 104). Deliberate indifference occurs when an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 352 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  A claim of deliberate indifference to medical needs carries both an objective and subjective component that must be established by a plaintiff: (1) a sufficiently grave deprivation of a basic human need (the objective component); and (2) a sufficiently culpable state of mind on behalf of the person acting under color of state law (the subjective component). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Concerning the objective component, because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *See Estelle*, 429 U.S. at 103–104; Farmer, 511 U.S. at 832.  A sufficiently serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).  Serious medical needs have been found when a failure to treat an injury or condition could result in "further significant injury or the unnecessary and wanton infliction of pain." *Ford v. LeMire*, No. 03-CV-10176-BC, 2004 WL 1234137, at *4 (E.D. Mich. June 1, 2004)

15

(internal quotations omitted) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

The subjective component requires a showing that prison officials have "a sufficiently culpable state of mind in denying medical care." *Boone v. Heyns*, No. 12-14098, 2020 WL 2832251, at *9 (E.D. Mich. May 31, 2020) (internal citation and quotation omitted); *see Farmer*, 511 U.S. at 834.  Although "it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment," *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), "[m]ere negligence is not sufficient," *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993).  Rather, the plaintiff must "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  In other words, "the defendant must possess a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (citing *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).  Plaintiff alleges that two Defendants showed deliberate difference to his serious medical needs.

### i.      Defendant John or Jane Doe 2

Plaintiff claims between June 2020 and December 2020, a medical supervisor, John or Jane Doe ("John or Jane Doe 2"), at NCI ignored protocols, institutional polices, and CDC orders or recommendations by not enforcing a quarantine or social distancing for inmates diagnosed with COVID-19 "which caused [Plaintiff] to contract COVID-19."  (Doc. 20 at 4).  Plaintiff says that John or Jane Doe 2 then "failed to admit, diagnos[e] and treat" him even after he "requested to be seen by medical, tested and treated for COVID-19 after becoming sever[e]ly ill and having

16

breathing complications because of asthma and COVID-19." (*Id.*). Defendants argue that Plaintiff does not allege that John or Jane Doe 2 knew of and disregarded an excessive risk to Plaintiff's health or safety. (Doc. 30 at 9). The Undersigned agrees.

This Circuit has held that the "COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020); *see also Brooks v. Washington*, 6th Cir. No. 21-2639 (Mar. 30, 2022 unpublished order). And "a medically vulnerable plaintiff may satisfy the objective prong [of a deliberate indifference claim] by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus." *Robinson v. Heidi Washington*, No. 2:21-CV-135, 2022 WL 855275, at *4 (W.D. Mich. Mar. 23, 2022) (citing *Wilson*, 961 F.3d at 840 (finding the objective prong satisfied because the combination of a prison's dormitory-style housing and the medical vulnerabilities of the plaintiffs presented a substantial risk that plaintiffs would be infected with COVID-19 and suffer serious health effects)). Here, Plaintiff alleges he is medically vulnerable because of his asthma. *See Wilson*, 961 F.3d. at 845 (Cole, C.J., concurring in part and dissenting in part) ("The likelihood of more severe effects [of COVID-19] increases dramatically for those . . . who have any number of preexisting conditions, including . . . asthma."). And he alleges conditions that could facilitate COVID-19 transmission, namely that NCI did not quarantine "non sick inmates from sick inmates." (Doc. 20 at 14); *cf. Robinson*, 2022 WL 855275, at *4 (the failure of the institution to enforce CDC's spacing guidelines one of multiple facts found to sufficiently allege the objective component on an initial screen).

Nevertheless, Plaintiff fails to allege facts sufficient for the subjective component of this claim. Even taking Plaintiff at his word that he requested to be seen by a medical professional for a severe COVID-19 infection but was refused, he does not allege that John or Jane Doe 2 was

made aware of this request or was the one who denied it.  Although Plaintiff may be attempting to bring a vicarious liability claim against John or Jane Doe 2 as a medical supervisor, "in § 1983 claims against a supervisory official, Plaintiff cannot rely on vicarious liability as a basis [for] the official's liability." *Crisp v. Neel-Wilson*, No. 2:15-CV-1265, 2015 WL 5882126, at *2 (S.D. Ohio Oct. 7, 2015).  Rather, "Plaintiff must 'show that [the] supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate' or otherwise that he was 'personally involved in the events leading to Plaintiffs claim.'"  *Id.* (citing *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634–35 (6th Cir. 2013) (quoting *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008)))．  Here, Plaintiff has not alleged such facts.

Similarly, he has not alleged the requisite facts that John or Jane Doe 2 was personally involved in or authorized, approved of, or knowingly acquiesced the non-quarantine conditions that allegedly led to Plaintiff's COVID-19 infection.  *See also Robinson*, 2022 WL 855275, at *9 ("The fact that Defendants cannot ensure proper spacing at all times does not, therefore, suggest that they are deliberately indifferent to the risk of COVID-19 transmission.").  Simply put, Plaintiff has not alleged facts that would allow the Undersigned to infer that John or Jane Doe 2 knowingly disregarded an excessive risk to Plaintiff's health or safety.  Accordingly, the Undersigned **RECOMMENDS** that all claims against John or Jane Doe 2 be **DISMISSED**.

### ii.    Defendant John or Jane Doe 5

Next, Plaintiff claims a John or Jane Doe medical supervisor at RCI ("John or Jane Doe 5") failed "to honor a bottom bunk restriction issued through the medical dept. at [Plaintiff's] previous intuition and Franklin Medical Center (FMC) d[e]spite having bottom bunks available." (Doc. 20 at 12).  Plaintiff says he suffered a knee injury as a result of not having his medical

restriction honored. (*Id.*). Additionally, Plaintiff alleges he was given a new inhaler in May 2021 after his asthma "flared up," which caused him to have an elevated heart rate and high blood pressure. (*Id.*). He says that during a "medical emergency," John or Jane Doe 5 refused to look at a medical file documenting these adverse effects. (*Id.*). Instead of treating him during the "medical emergency" at Plaintiff's request, John or Jane Doe 5 accused him of being on drugs and placed him in a "drunk tank" for over five hours. (*Id.*). Plaintiff alleges that John or Jane Doe 5 subsequently took away his inhaler for three days, during which time he suffered multiple asthma attacks after mace was sprayed in his vicinity. (*Id.* at 12–13). Defendants argue that Plaintiff does not allege that John or Jane Doe 5 knew of and disregarded an excessive risk to Plaintiff's health or safety during the course of their medical treatment. (Doc. 30 at 9). The Undersigned analyzes Plaintiff's allegations as three possible incidents of deliberate indifference to Plaintiffs' serious medical needs.

First, with respect to the bottom bunk restriction, regardless of whether Plaintiff successfully alleges the objective component, he fails to allege the subjective component of this claim. Specifically, Plaintiff does not allege the requisite facts that John or Jane Doe 5 had knowledge of his bottom bunk restriction but disregarded it. *Comstock*, 273 F.3d at 703. Especially given Plaintiff's pleading that the alleged medical restriction was not issued by John or Jane Doe 5 or another medical professional at RCI (*see* Doc. 20 at 12), the Court cannot infer from the Amended Complaint that John or Jane Doe 5 had a sufficiently culpable state of mind that denying Plaintiff a bottom bunk presented a serious medical risk. *See Broyles*, 478 F. App'x at 975.

Second, the Undersigned addresses Plaintiff's claim about his treatment at John or Jane Doe 5's hands during a "medical emergency." (Doc. 20 at 12–13). It is unclear from his Amended

Complaint what the medical emergency Plaintiff experienced was. The Undersigned reads the Amended Complaint as alleging either: (1) the medical emergency was Plaintiff experiencing an elevated pulse and high blood pressure from his newly prescribed inhaler; or (2) the medical emergency was Plaintiff experiencing symptoms unrelated to the inhaler, but he incidentally had an elevated pulse and high blood pressure from his inhaler. (*See id.*). Even taking Plaintiff's allegation that John or Jane Doe 5 did not properly review his medical chart at his request as true, without more clarity about the medical emergency, the Undersigned cannot conclude that Plaintiff sufficiently alleged that John or Jane Doe 5 disregarded an excessive risk to Plaintiff's health or had a sufficiently culpable state of mind that rose above negligence in his treatment of Plaintiff. *See Broyles*, 478 F. App'x at 975 (citation omitted).

Lastly, turning to Plaintiff's allegation that John or Jane Doe 5 took away his inhaler and he subsequently experienced asthma attacks, "[a] diagnosis of asthma, alone, does not necessarily constitute a serious medical condition" for Eighth Amendment purposes. *Nettles v. Edgar*, No. 1:22-CV-119, 2023 WL 5057687, at 4 (W.D. Mich. June 21, 2023), *report and recommendation adopted*, No. 1:22-CV-119, 2023 WL 4486139 (W.D. Mich. July 12, 2023) (citing *Dillard v. Henderson*, No. 4:20-CV-P185, 2021 WL 3134252, at *2 (W.D. Ky. July 23, 2021)). Whether asthma is a serious medical condition depends on the "degree of the condition." *Reeves v. Jaramillo*, No. 4:04-CV-125, 2005 WL 2177238, at *4 (W.D. Mich. Sept. 8, 2005) (finding no evidence of a serious asthma attack when plaintiff admitted that he was suffering "only from 'shortness of breath' and that he resolved the situation 'by doing some slow breathing'"). While Plaintiff does not allege facts or provide medical records that would allow the Undersigned to deduce the severity of his asthma attacks, the Undersigned infers that Plaintiff's numerous asthma attacks were serious. (*See* Doc. 20 at 12–13). But Plaintiff does not allege facts that John or Jane

Doe 5 knew he was experiencing these asthma attacks without his inhaler yet still disregarded an excessive risk to Plaintiff's health. *See Comstock*, 273 F.3d at 703. As such, he has failed to allege the subjective component of this claim. Accordingly, the Undersigned **RECOMMENDS** that all claims against Defendant John or Jane Doe 5 be **DISMISSED**.

### D. Eighth Amendment Failure to Protect Claim

Plaintiff next alleges one instance of a Defendant failing to protect him from harm when Plaintiff was attacked by a fellow inmate. The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of its inmates." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting *Farmer,* 511 U.S. at 832). And while "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners[,] . . .[i]t is not, however, [that] every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 833–834 (internal quotation marks and citations omitted). A claim for failure to take such reasonable measures requires a showing that a prison official acted with "deliberate indifference" to a substantial risk of harm. *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). This has both an objective and subjective component. *Id.*

The objective component for a claim based on the failure to prevent from harm requires that the inmate "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). "To do so, he must allege that 'there was a substantial risk of serious harm to inmates generally, or to himself specifically.'" *Summers v. Teasley*, No. 4:16CV-P141-JHM, 2017 WL 1228420 (W.D. Ky. Mar. 31, 2017) (citing *Hester v. Morgan*, 52 F. App'x 220, 222 (6th Cir. 2002)). The subjective component requires that the prison official had "a sufficiently culpable state of mind." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511

U.S. at 834). This means that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). "[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). But "the facts alleged must show that the officers 'provid[ed] an opportunity for the attack and d[id] nothing' or remained 'idly by while a known attack took place without intervening.'" *Evans v. United States*, No. 2:19-CV-2487-SHL-ATC, 2021 WL 11728405, at *4 (W.D. Tenn. May 25, 2021) (citing *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003)).

Plaintiff alleges that in May 2021, Defendant Spetnagel failed to protect him when Spetnagel "allowed if not directed" an assault on Plaintiff by a "known gang member." (Doc. 20 at 14). As previously described, this incident occurred after Spetnagel allegedly threatened such violence in January 2021 in response to Plaintiff filing staff complaints. (*Id.*). Plaintiff says that Spetnagel was present as a "immediate supervisory officer" during the assault, and Plaintiff had "no prior altercation or communication with this inmate who assaulted" him. (*Id.*). Plaintiff says he suffered physical pain and distress from the assault. (*Id.*). Defendants argue that even though Spetnagel was present during the alleged assault, the fact that Plaintiff did not have a prior altercation or any prior communication with the assailant suggests that the assault was a surprise attack for which Spetnagel cannot be found liable. (Doc. 30 at 10–11).

If his allegations are true, Plaintiff sufficiently alleges the objective component of a failure to protect claim because he says that Spetnagel threatened him with violence by a known gang member. The Court infers that this threat posed a "substantial risk of serious harm to . . . [Plaintiff]

specifically." *Hester*, 52 F. App'x at 222; *cf. Hampton v. Defendant One*, No. 4:17CV-P147-JHM, 2018 WL 1545591, at *5 (W.D. Ky. Mar. 29, 2018) ("Plaintiff makes no allegation that there was any prior warning or threat to him or that he had been the subject of an assault in the past. Because Plaintiff has failed to allege that a substantial risk of harm existed, he fails to state a claim upon which relief may be granted."). Consequently, the Undersigned does not view this attack as a "surprise attack."

Moreover, Plaintiff sufficiently alleges the subjective component at this early stage. Plaintiff's claim that Spetnagel threatened assault by a gang member coupled together with the alleged facts that Plaintiff's assailant was a known gang member and the attack occurred while Spetnagel was present allow the Court to infer that Spetnagel knew of and disregarded a threat to Plaintiff's safety. (*See* Doc. 20 at 14); *see Curry,* 249 F.3d at 506 ("Plaintiffs may prove that the defendants had actual knowledge of a substantial risk in the usual ways . . . . That is, a factfinder may infer actual knowledge through circumstantial evidence, or may conclude a prison official knew of a substantial risk from the very fact that the risk was obvious." (citations and internal quotation marks omitted)). Therefore, Plaintiff has sufficiently pled both elements of a failure to protect claim. Accordingly, the Undersigned **RECOMMENDS** that the Eighth Amendment failure to protect claim against Defendant Spetnagel **PROCEED**.

### E.  Fourteenth Amendment Due Process Claims

Finally, Plaintiff challenges two Defendants' actions during a disciplinary hearing on due process grounds. "To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *Williams v. Wilkinson*, 51 F. App'x 553, 556 (6th Cir. 2002) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). And where a protected interest

exists, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).  But it is well established that "[a] prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2–3 (6th Cir. July 28, 2022) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

Plaintiff alleges that two different NCI employees, Defendants John Doe 3 and Cobb, violated his Fourteenth Amendment right to due process in September or October 2020 during a disciplinary hearing about a false conduct report written by John Doe 3.  (Doc. 20 at 6).  Specifically, Plaintiff claims John Doe 3 "would not cooperate or answer questions" the hearing.  (*Id.*).  The Court previously construed this as an allegation that Plaintiff was "denied an opportunity to call witnesses and present evidence in his favor."  (Doc. 23 at 16 (internal quotations marks and citation omitted)).  And Plaintiff says that Defendant Cobb, the RIB lieutenant running the hearing, did not allow Plaintiff to present witnesses, question witnesses, or have evidence tested.  (Doc. 20 at 10).  Defendants argue that the claim against John Doe 3 rests on "unclear and purely conclusory allegations," and that Plaintiff's claim against Defendant Cobb does not include necessary facts like which witnesses were denied or the substance of the denied testimony.  (Doc. 30 at 12).

Regardless of whether Plaintiff's Amended Complaint sufficiently alleges that he was denied the opportunity to call witnesses or present evidence at the hearing by either John Doe 3 or Cobb, Plaintiff fails to allege the outcome of the disciplinary hearing was a punishment that "will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Damron*, 2022 WL 4587625, at *2–3 (citing *Sandin*, 515 U.S. at 484, 487).  Indeed, while Plaintiff says that he suffered "severe mental, physical, [and] emotional distress" from the alleged denial of due process, his Amended Complaint does not allege any liberty or property interest he could have been or was deprived as a result of the disciplinary hearing.  (Doc. 20 at 6, 10); *see Williams*, 51 F. App'x at 557 ("The 'manner in which' (or process by which) the plaintiff lost his interest is considered only to the extent that the interest is constitutionally protected.").  To the extent Plaintiff argues that this information was included in his original complaint so it should be considered here (*see* Doc. 41 at 3; Doc. 8), Plaintiff's original complaint was dismissed without prejudice (*see* Docs. 10, 17), and the Court denied his motion to further amend or supplement his amended complaint (*see* Docs. 29, 49).  *See Kellom v. Quinn*, 86 F.4th 288, 292 (6th Cir. 2023) ("An amended complaint 'supersedes an earlier complaint for all purposes.'") (citing *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014)).  Consequently, the Undersigned **RECOMMENDS** that the Fourteenth Amendment due process against Defendants John Doe 3 and Cobb be **DISMISSED**.

## IV.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 30) be **GRANTED in part and DENIED in part**.  The Undersigned **RECOMMENDS** that Plaintiff's First Amendment retaliation claims against Defendant Hyatt, Defendant Spetnagel, and Defendant Anthony; his First Amendment interference with privileged legal mail claims against Defendant mailroom supervisor John Doe 3 and Defendant investigator John or Jane Doe 4; and his Eighth Amendment failure to protect claim against Defendant Spetnagel **PROCEED**.  The Undersigned **RECOMMENDS** that Plaintiff's remaining First

Amendment retaliation claims, Eighth Amendment deliberate indifference to serious medical needs claims, and Fourteenth Amendment due process claims be **DISMISSED**.

## Procedure on Objections

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date: January 22, 2024                    /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE