# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MARCUS HONZU,**

    **Plaintiff,**

    v.

**JOHN DOE [1] – CHIEF INSPECTOR OF ODRC,** *et al.***,**

    **Defendants.**

**Case No. 2:22-cv-292**
**District Judge Algenon L. Marbley**
**Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 93). For the following reasons, the Undersigned **RECOMMENDS GRANTING** the Motion. The Undersigned further **RECOMMENDS** that Plaintiff's unexhausted First Amendment claims against Defendants Spetnagel and Anthony and Eighth Amendment claim against Defendant Spetnagel be **DISMISSED without prejudice**.

**I.    BACKGROUND**

Plaintiff Marcus Honzu, who is incarcerated at Trumbull Correctional Institution and proceeds *pro se*, filed this action on January 25, 2022. (Doc. 1). His Amended Complaint includes claims against several employees at two prisons where he was previously housed, Noble Correctional Institution ("NCI") and Ross Correctional Institution ("RCI"). (Doc. 20). Relevant at this juncture, he brings claims against NCI Unit Manager Hiatt[1]; NCI Institutional Investigator McGilton; NCI mailroom supervisor Burkhart; RCI Lieutenant Spetnagel; and RCI corrections officer Anthony. (*Id.*; *see* Doc. 85 (allowing Plaintiff to supplement his complaint with the

---

[1] Plaintiff's Amended Complaint spells this Defendant's name as "Hyatt." (Doc. 20 at 1).

identities of McGilton and Burkhart); *see also* Doc. 56 (dismissing several defendants and claims)).

The Amended Complaint spans both time and space. Beginning with his allegations against NCI employees, Plaintiff first alleges that in June 2020, Defendant Hiatt retaliated against him for "causing major issues in the dorm by complaining of a Covid-19 cover up." (Doc. 20 at 9). In response to Plaintiff's complaints, Hiatt kicked him out of the merit dorm. (*Id.*). Then in September 2020, Defendant McGilton impermissibly opened his legal mail. (*Id.* at 6). Similarly, Defendant Burkhart also opened Plaintiff's legal mail in November 2020. (*Id.* at 8).

At RCI, Plaintiff alleges that, sometime in 2021, Defendant Spetnagel threatened "gang violence" if Plaintiff "did not lay down and shut his mouth and stop complaining against staff members[.]" (*Id.* at 14). Plaintiff further alleges that Spetnagel failed to intervene when a "known gang member" assaulted Plaintiff in May 2021. (*Id.*). Finally, Plaintiff claims that from August 2021 through December 2021, Defendant Anthony retaliated against him "continuously." (*Id.* at 19). According to Plaintiff, Anthony threatened "to have [him] assaulted" if Plaintiff "continued to complain about the actions of staff members at RCI." (*Id.*). The Court construed Plaintiff's Amended Complaint as alleging claims under 42 U.S.C. § 1983 for violations of his First and Eighth Amendment rights. (Docs. 50, 56).

Defendants filed a Motion for Summary Judgment, along with manual audio recordings to support the Motion. (Doc. 93, 95, 99; *see also* Doc. 102 (stating Plaintiff has had the opportunity to review the recordings)). Several weeks after Plaintiff's response deadline came and went, the Court warned Plaintiff that if he did not file a response by June 2, the Court would treat Defendants' Motion as unopposed. (Doc. 97). Still, he did not file a response. Accordingly, the Undersigned treats the Motion as unopposed and ready for review.

2

## II.  STANDARD

A court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

"Even when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011).  But "[i]t is not the duty of the district court . . . to search the entire record to determine whether there is a genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (Table) (6th Cir. 2000) (citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)).  Rather, "[t]he court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Id.* (citing *Guarino*, 980 F.2d at 410).

3

## II. DISCUSSION

Because Defendants' Motion for Summary Judgment is unopposed, the Undersigned considers only whether Defendants have shown there is insufficient evidence to support any element of Plaintiff's claims. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Ultimately, the Undersigned finds Defendants have met their burden or, alternatively, have shown that Plaintiff failed to exhaust his administrative remedies.

### A. First Amendment Retaliation

Beginning with Plaintiff's First Amendment claim against Defendant Hiatt, Plaintiff alleges that in June 2020 Defendant Hiatt retaliated against him for "complaining of a COVID-19 cover up" by kicking him out of the merit dorm." (Doc. 20 at 9). To succeed on a claim that a retaliatory action violates the Constitution, Plaintiff must demonstrate that (1) he engaged in protected conduct; (2) an adverse action was taken against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) "the adverse action was motivated at least in part by the [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff's engagement in "filing a non-frivolous grievance against prison personnel is protected conduct under the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." (citation modified)). And, as relevant here, "an action comparable to transfer to administrative segregation would certainly be adverse." *Thaddeus–X*, 175 F.3d at 396.

While Defendant's Motion attacks several aspects of Plaintiff's claim, the Undersigned only need consider one: whether there is insufficient evidence to support that Plaintiff suffered an

4

adverse action. As stated, actions comparable to administrative segregation can be considered adverse in the First Amendment retaliation context. *Thaddeus–X*, 175 F.3d at 396. Further, "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." *Hill*, 630 F.3d at 474; *see also King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005) (finding that an increase in security level can be considered an adverse action because the ramification could be loss of disciplinary or good time credits).

Here, Plaintiff alleges that Hiatt removed him from a merit dorm in response to Plaintiff's complaints of a COVID-19 cover up. (Doc. 20 at 9). Even assuming that Plaintiff's complaints were protected conduct, the record shows that he suffered no adverse action. Between December 2019 and September 2020, Plaintiff was classified as a security level 2 inmate and housed in a general population dorm. (*See* Doc. 93-1 at 1–2 (declaration of Jared McGilton), 18–19 (record of Plaintiff's dorm placements)). Specifically, he was housed in Lock A2/E/61 in December 2019, he was moved to Lock A2/E/49 in April 2020, then to Lock A2/E/59 in July 2020. (*Id.* at 18–19). According to NCI's institutional investigator, the A2/E general population housing unit is not afforded special privileges such that would be enjoyed in NCI's "merit dorm" equivalent, the Cadre unit. (*Id.* at 2 (noting the Cadre unit is allowed extra visits, extra recreation, special clothing, and special job assignments)). So, it is unclear exactly what increased restrictions or decreased privileges Plaintiff would experience by being moved around the A2 unit. And unlike what Plaintiff's Amended Complaint implies, the record shows Plaintiff "was never housed in the Cadre unit." (*Id.*; *Compare id.* (noting the Cadre unit is labeled "D-1") *with id.* at 18–19 (not showing an assignment to D-1)). Therefore, he never had special privileges or "merit" status to lose.

While Plaintiff alleges that he was housed in the merit dorm in June 2020 and Defendant Hiatt retaliatorily orchestrated his removal, that is not what the record before the Undersigned

5

reflects.  Importantly, Plaintiff cannot rely on his unsworn pleading at this stage.  (*See generally* Doc. 20 (not reflecting the Amended Complaint was signed under penalty of perjury or similar language)).  *See*, *e.g.*, *Brown v. Mahlman*, No. 1:22-CV-239, 2024 WL 248580, at *3 (S.D. Ohio Jan. 23, 2024) ("Plaintiff's unsworn complaints, which were not signed under penalty of perjury, do not constitute evidence for summary judgment purposes."), *report and recommendation adopted*, No. 1:22-CV-239, 2024 WL 1340261 (S.D. Ohio Mar. 29, 2024); *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851–52 (S.D. Ohio 2011) ("When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings.") (citation omitted); *cf. Broomfield v. Bailey*, No. 1:23-CV-108, 2025 WL 316198 (S.D. Ohio Jan. 28, 2025) (discussing that a prisoner's complaint stating it was signed under penalty of perjury (or similar language) can operate as a declaration or affidavit as to facts based on personal knowledge), *report and recommendation adopted*, No. 1:23-CV-108, 2025 WL 606539 (S.D. Ohio Feb. 25, 2025).

At base, Defendants have met their burden to show there is insufficient evidence to support that Plaintiff suffered an adverse action giving rise to a First Amendment violation.  Accordingly, the Undersigned **RECOMMENDS** that summary judgment be **GRANTED** in Defendant Hiatt's favor.

    **B.**    **First Amendment Interference with Legal Mail**

Plaintiff's Amended Complaint further alleges that Defendants Burkhart and McGilton opened his legal mail outside of his presence in violation of his First Amendment rights.  (*Compare* Doc. 20 at 8 (stating a Jane or John Doe mailroom supervisor at NCI engaged in this behavior in November 2020) *with* Doc. 83 at 2 (identifying Michael Burkhart as the mailroom supervisor); *compare* Doc. 20 at 6 (alleging a John Doe investigator at NCI engaged in this behavior in September 2020) *with* Doc. 83 at 2 (identifying the investigator as Jared McGilton)).

6

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)). "The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court, not one of fact that can be submitted to a jury." *Id.* at 873. When a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)).

At the outset, it is not clear what "legal mail" Plaintiff claims either Defendant opened outside of his presence or otherwise in violation of the prison's legal mail policy or his First Amendment rights. Plaintiff's Amended Complaint does not specify. (*See* Doc. 20). And because he did not file a response to Defendants' Motion for Summary Judgment or a summary judgment motion of his own, Plaintiff has not provided evidence supporting his allegations. At this stage, the Undersigned cannot take the unsworn Amended Complaint's word for it that the mail at issue qualified as legal mail. In other words, at the summary judgment phase, Plaintiff's conclusory assertions are not enough. *Cf. Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002) ("[T]his court has consistently held that damage[s] claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of

7

the asserted constitutional rights violation recited in the complaint and what each defendant did to violate the asserted right."); *Terry v. Crawford*, No. 3:21-CV-35, 2024 WL 1155854, at *5 (S.D. Ohio Mar. 18, 2024).

Though Defendants offer examples of mail Plaintiff received at NCI that he could be talking about, the fact remains that Defendants are guessing at which pieces of mail form the basis of Plaintiff's allegations. (Doc. 93 at 15–16 (discussing a December 2020 grievance about two legal mail violations); 18–19 (discussing an August 2020 incident where purported legal mail was opened in Plaintiff's presence after a drug dog alerted on it)). Even if the Court were to consider these examples, problems abound with each.

For example, in December 2020, Plaintiff's grievance about two legal mail violations was granted. (Doc. 93-2 at 27). Nowhere does the grievance state that either Burkhart or McGilton opened the legal mail at issue themselves. (Doc. 93-2 at 27–29 (grievance stating only "mail room staff" opened Plaintiff's mail)). And the record shows that neither Defendant was personally involved in opening mail in NCI's mailroom at that time. (Doc. 93-1 at 2 (declaration of Defendant McGilton)). *Cf. Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." (citation omitted)).

Additionally, the record shows that in August 2020, while Defendant McGilton did open a piece of Plaintiff's purported legal mail, it was opened in front of Plaintiff after a drug dog alerted on it. (*See, e.g.,* Doc. 93-1 at 2, 8 (incident report stating the mail was opened in Plaintiff's presence and a piece of paper subsequently tested positive for synthetic methamphetamine derivatives); *see also* Doc. 96, Audio Exhibit A1 (McGilton's interview of Plaintiff)). So, even if this incident is what Plaintiff refers to in his Amended Complaint, his legal mail was not opened

8

outside of his presence like he claims. (*See* Doc. 20 at 6; *see also* Doc. 93-2 (Plaintiff's December 2020 grievance discussing the August incident stating the legal mail "was opened [u]pon my arrival to [McGilton's] office")).

For these reasons, the Undersigned concludes that Defendants have met their summary judgment burden for Plaintiff's First Amendment legal mail claims against Defendants Burkhart and McGilton. The Undersigned **RECOMMENDS** that they be **GRANTED** summary judgment.

### C. Unexhausted Claims

The Undersigned next turns to Plaintiff's allegations against Defendants Spetnagel and Anthony for retaliating against him in violation of the First Amendment and his allegations against Defendant Spetnagel for failing to protect him from an assault in violation of the Eighth Amendment. The Undersigned concludes that Plaintiff fatally failed to exhaust his administrative remedies as to each.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "exhaustion is mandatory," and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see* 42 U.S.C. § 1997e(a). An inmate must exhaust his claim by "taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance procedure[.]" *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). This requirement exists to timely notify prison authorities of prisoners' potential claims, so they may investigate and remedy those claims before prisoners pursue litigation. *See Potee v. Cook*, No. 2:19-cv-5058, 2021 WL 3076396, at *3 (S.D. Ohio July 21, 2021).

Ohio's prison grievance procedure has three steps, and the PLRA demands compliance with all of them. *See Reed-Bey*, 603 F.3d at 324. First, "[w]ithin fourteen calendar days of the

9

event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code § 5120-9-31(J)(1). Second, "[i]f the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may file a notification of a grievance with the inspector of institutional services." *Id.* at § 5120-9-31(J)(2). Once received, "[t]he inspector of institutional services shall provide a written response to the grievance within fourteen calendar days of receipt." *Id.* Third, "[i]f the inmate is dissatisfied with the disposition of grievance, the inmate may file an appeal with the office of the chief inspector." *Id.* at § 5120-9-31(J)(3). Once the chief inspector decides the appeal, the prisoner has exhausted his administrative remedies. *See Ball v. Ohio*, No. No. 2:20-cv-1759, 2020 WL 1956836, at *3 (S.D. Ohio Apr. 23, 2020), *report and recommendation adopted*, No. 2:20-cv-1759, 2020 WL 2468742 (S.D. Ohio May 13, 2020).

Generally, a prisoner fails to exhaust his administrative remedies if he (1) does not adhere to all procedural rules, including deadlines, or (2) if he fails to include information required "by the applicable grievance procedures." *See Jordan v. Woods*, No. 1:10-cv-598, 2012 WL 1805491, at *2 (S.D. Ohio Apr. 2, 2012) (saying that prisoners must complete the administrative review process according to the rules set out in the prison grievance process), *report and recommendation adopted*, No. 1:10-cv-598, 2012 WL 1805488 (S.D. Ohio May 17, 2012); *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (stating that plaintiffs fail to exhaust administrative remedies if they do not include an official's name in a grievance if it is required by the grievance policies); *Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 2:14-cv-338, 2017 WL 1316942, at *8 (S.D. Ohio Apr. 10, 2017) (noting that Ohio's grievance policies require "factual context including dates, times and places"), *report and recommendation adopted*, No. 2:14-cv-338, 2017 WL 2210866 (S.D. Ohio

10

May 19, 2017). Relevant here, Section 5120-9-31(J) mandates that "[i]nformal complaints must contain specific information," including "dates, times, places, the event giving rise to the complaint and . . . the name or names of personnel involved and the name or names of any witnesses." Under this policy, if a prisoner does not know the identity of the prison staff involved, he may file a "John/Jane Doe" complaint, but he still must be specific as to "dates, times, places, physical; descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." Ohio Admin. Code § 5120-9-31(J). On the whole, what matters is that a prisoner's grievance provides prison officials fair notice of the basis of his complaint. *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009).

### 1. First Amendment Retaliation

To begin, Plaintiff alleges that between January 2021 and December 2021, Defendant Spetnagel retaliated against him by threatening that if Plaintiff did not stop filing complaints against staff members, Plaintiff would be subjected to gang violence. (Doc. 20 at 14). Furthermore, Spetnagel threatened Plaintiff that if he "knew what was good for him[,] he would not remain in RCI population another day" because Plaintiff would not "drop his complaints against staff members at RCI." (*Id.* at 15). Plaintiff brings substantially similar allegations against Defendant Anthony. That is, between August 2021 and December 2021, Defendant Anthony retaliated against him by threatening to write false conduct reports and threatened to have him assaulted if "he continued to complain about the actions of staff members at RCI." (*Id.* at 19).

As stated, to succeed on a retaliation claim, Plaintiff must demonstrate that (1) he engaged in protected conduct; (2) an adverse action was taken against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) "the adverse action was

11

motivated at least in part by the [his] protected conduct." *Thaddeus-X*, 175 F.3d at 394. Ultimately, though, Defendants successfully demonstrate that Plaintiff failed to exhaust the claims.

In particular, none of Plaintiff's 2021 grievances in the record concern any misconduct on the part of either Defendant Spetnagel or Anthony or describe the specific retaliation he now alleges. (*See, e.g.* Doc. 93-2 at 90 (May 2021 grievance alleging general "issues" with "staff members" and alleging Plaintiff was "written up" for a rule violation because of a medical issue), 91 (June 2021 grievance alleging a non-defendant officer gave Plaintiff a ticket without justification), 94 (June 2021 grievance alleging a "medical supervisor" threatened Plaintiff and took away his inhaler), 96 (June 2021 grievance alleging Plaintiff's legal mail was opened), 100 (August 2021 grievance alleging issues with Plaintiff's personal mail), 102 (August 2021 grievance alleging an unnamed "white shirt" did not assist him when he suffered breathing issues), 104 (same), 105 (September 2021 grievance alleging Plaintiff's visitor list was not correctly maintained), 107 (October 2021 grievance alleging Plaintiff's legal mail was opened), 109 (October 2021 grievance alleging Plaintiff's visitor list was not correctly maintained)).

Even the few grievances that gesture to "retaliation" do not identify anyone by name or provide specific details of the retaliation. (*See, e.g.*, *id.* at 95 (June 2021 grievance mentioning "retaliation" in relation to a medical supervisor), 98 (August 2021 grievance stating Plaintiff wants to discuss allegations of "threats" and "retaliation" but not naming or describing the retaliation), 99 (August 2021 grievance alleging the "entire administration" at RCI "is working to harass, discredit, and retaliate" against Plaintiff, but not naming or describing the retaliation)). Therefore, the Undersigned cannot conclude with any certainty that the allegations in these grievances match those raised in his pleading. And importantly, by not providing more information, Plaintiff failed to give Spetnagel or Anthony "fair notice of the alleged mistreatment or misconduct" forming the

12

basis of his complaints. *LaFountain*, 334 F. App'x at 740; *see, e.g.*, *Marshall*, 2017 WL 1316942, at *8–9 (finding a prisoner failed to exhaust his administrative remedies where he failed to provide names of prison officials, dates, times, and places in his grievances); *Thompson v. Erdos*, No. 1:16-cv-812, 2018 WL 8807829, at *5–6 (S.D. Ohio Sept. 21, 2018) (finding Plaintiff's "general complaints" and "allegations not tied to specific conduct or specific dates" inadequate for exhaustion purposes).

Having no obviously relevant grievance and no response from Plaintiff, there is no "genuine dispute of material fact that [Plaintiff] failed to exhaust" his administrative remedies. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022); *see also Mattox v. Edelman*, 851 F.3d 583, 589–90 (6th Cir. 2017) (saying summary judgment is appropriate when there is an "absence of a genuine dispute as to any material fact regarding non-exhaustion"). Consequently, the Undersigned **RECOMMENDS** that Plaintiff's First Amendment retaliation claims against Defendant Spetnagel and Defendant Anthony be **DISMISSED without prejudice** for failure to exhaust his administrative remedies. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004) ("A dismissal under § 1997e should be without prejudice."); *Bell v. Konteh*, 450 F.3d 651, 654–55 (6th Cir. 2006); *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

    2.    *Eighth Amendment Failure to Protect*

Lastly, Plaintiff alleges that in May 2021, while he was serving time in limited privilege housing, he was assaulted by a "known gang member." (Doc. 20 at 14). Plaintiff says that Spetnagel "was present," "was the immediate supervisory officer," and "allowed if not directed this assault." (*Id.*). The Court previously construed this allegation as an Eighth Amendment failure to protect claim. (Doc. 50 at 21).

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of its inmates." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). And while "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners[,] . . .[i]t is not, however, [true that] every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 833–834 (citation omitted). A claim for failure to take such reasonable measures requires a showing that a prison official acted with "deliberate indifference" to a substantial risk of harm. *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Because Plaintiff failed to exhaust this claim, the Undersigned need not get into specifics.

Once again, none of the grievances Plaintiff filed at RCI during 2021 allege Spetnagel was involved with or directed any assault. (*See, e.g.*, Doc. 93-2 at 90, 91, 94, 96, 100, 102, 104, 105, 107, 109). None of the grievances even mention an assault. (*Id.*). For this reason, Defendants again succeed in demonstrating that there is no genuine issue of material fact as to exhaustion. *Lamb*, 52 F.4th at 292; *Mattox*, 851 F.3d at 589–90. Therefore, the Undersigned **RECOMMENDS** this claim be **DISMISSED with prejudice**, as well.

*****

As a final note, Defendants' Motion for Summary Judgment further argues that all Defendants are entitled to qualified immunity. (Doc. 93 at 34–25). But because the Undersigned finds that none of Plaintiff's claims survive for other reasons, the Undersigned does not consider Defendants' qualified immunity arguments.

III.     **CONCLUSION**

The Undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 93) be **GRANTED**. The Undersigned further **RECOMMENDS** that Plaintiff's unexhausted First Amendment claims against Defendants Spetnagel and Anthony and Eighth Amendment claim against Defendant Spetnagel be **DISMISSED without prejudice**.

Date: August 19, 2025                           /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE

**Procedure on Objections**

Under Federal Rule of Civil Procedure 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended by the Court on a timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).